83 F.3d 1575
 96 Cal. Daily Op. Serv. 3413, 96 Daily Journal
D.A.R. 5580
Lisa WALLERI and Dan Walleri, Plaintiffs-Appellants,
v.
The FEDERAL HOME LOAN BANK OF SEATTLE, a Washington
corporation; Michael Cline; Ronald Karr; Steven Scott;
Office of Thrift Supervision, Department of the Treasury of
the United States; United States of America; Resolution
Trust Corporation, as conservator for Far West Federal Bank,
a savings and loan association; et al., Defendants-Appellees.
Lisa WALLERI; Dan Walleri, Plaintiffs,
v.
The FEDERAL HOME LOAN BANK OF SEATTLE, a Washington
corporation; James Faulstich, Defendants-Appellants,
v.
OFFICE OF THRIFT SUPERVISION, Defendant-Appellee,
and
United States of America, Defendant.
 Nos. 94-35414, 94-35470.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 12, 1995.
Decided May 15, 1996.
 
 1
 Susan K. Eggam and Tomas F. Ryan, Portland, Oregon, for plaintiffs-appellants.
 
 
 2
 George W. Akers, Montgomery, Purdue, Blankinship & Austin, Seattle, Washington; Jonathan T. Harnish and David J. Riewald, Bullard, Korshoj, Smith & Jernstedt, Portland, Oregon, for defendants-appellees-appellants.
 
 
 3
 Thomas J. Segal, United States Department of Justice, Washington, DC, for defendant-appellee.
 
 
 4
 Appeal from the United States District Court for the District of Oregon, Donald C. Ashmanskas, Magistrate Judge, Presiding.
 
 
 5
 Before: GOODWIN, Circuit Judge, and HUG, Jr., Chief Judge, and SCHWARZER, Senior District Judge.*
 
 
 6
 SCHWARZER, Senior District Judge.
 
 
 7
 Plaintiff Lisa Walleri ("Walleri") appeals from a judgment of the district court, entered March 10, 1994, dismissing her action, in which her husband Dan was a co-plaintiff, against her former employer, the Federal Home Loan Bank of Seattle (FHLBS), its former president James Faulstich (Faulstich), several other employees of FHLBS, the United States, and the office of Thrift Supervision. This court has jurisdiction of the appeal under 28 U.S.C. § 1291.
 
 I. The Industry Background
 
 8
 Although superficially quite complex, the issues presented on appeal become clear when viewed in the context of the regulatory framework within which they arose. In substance, during the relevant period, there existed twelve regional federal home loan banks, including Walleri's employer FHLBS, which served two separate functions. One was to provide credit for their member savings and loan associations. The other was to perform periodic examinations of those associations on behalf of the Federal Home Loan Bank Board (FHLBB), which was the regulatory agency overseeing them.
 
 
 9
 With respect to the first (private banking) function, the banks, though created by Congress, operated as private corporations. Each was owned by its member associations and derived its capital by selling securities and providing services. With respect to the second (regulatory) function, FHLBB delegated its power to examine savings and loan associations to the presidents of the various FHLBs, including FHLBS. The presidents in turn designated employees of the banks to serve as agents of the FHLBB in conducting examinations. FHLBB retained authority to direct these agents in the performance of the delegated regulatory functions. But control of the terms and conditions of each individual's employment relationship to his or her employer-bank was reserved by statute to the FHLBs.
 
 
 10
 In 1989, Congress substantially changed this framework. FHLBB was replaced by the Office of Thrift Supervision (OTS). While the FHLBs continued to perform banking functions for their member associations, their employees no longer had authority to conduct examinations.
 
 II. The Material Facts
 
 11
 In 1988, Walleri was assigned by FHLBS to conduct an examination (or review) of Far West Federal Bank (Far West), a federally chartered savings and loan association, for FHLBB. Walleri concluded that Far West had engaged in irregularities and included findings to that effect in her draft report. Her supervisors did not agree with all of her conclusions and revised her report. She refused to sign the revised report and in October 1988 was removed from her assignment. She then made a critical report of these events to the Office of Regulatory Affairs of the FHLBB (ORA). In December 1988 and in January 1989, she received reviews from her supervisors who rated her performance as unacceptable. Suffering from stress, she then took a medical leave of absence. In May 1989, she returned to her job for part-time work. After a day and a half, she was sent home and received no further assignments. On June 6, she received a letter terminating her. In October, 1990, she appeared before a subcommittee of the House of Representatives to describe the events about which she complains in this action. That month she also made a report to the Federal Bureau of Investigation (FBI).
 
 
 12
 III. The Claims Relating to Walleri's Employment Relationship
 
 
 13
 A. The Whistleblower Claim.
 
 
 14
 Walleri's principal claim is founded on 12 U.S.C. § 1831j. The predecessor of that section was adopted in 1989 as section 932(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183. In the form in which it was then enacted, the provision prohibited "[federally] insured depositary institution[s]" from discharging or otherwise discriminating against an employee "because the employee ... provided information to any Federal Banking agency or to the Attorney General regarding a possible violation of any law or regulation...." Since Walleri was not an employee of a federally insured depositary institution, she would not have been entitled to protection under that section.
 
 
 15
 In 1991, the statute was amended by section 251 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102-242, 105 Stat. 2236. The amendment extended the statute's protection to employees of federal home loan banks. It also for the first time included a definition of the term "federal banking agency." The definition included the Federal Deposit Insurance Corporation, the Board of Governors of the Federal Reserve System, the Federal Housing Finance Board, the Comptroller of the Currency and the OTS. It did not include FHLBB because, pursuant to the 1989 legislation, FHLBB had been replaced by OTS. Finally, the 1991 amendment also provided that it "shall be treated as having taken effect on January 1, 1987...." Thus, the amendment applies to the 1988 and 1989 events about which Walleri complains.
 
 
 16
 Walleri brought § 1831j claims against both FHLBS and OTS. Walleri alleged that FHLBS violated § 1831j by retaliating against her for two reasons: (1) for reporting irregularities and possible illegalities involving Far West to her FHLBS supervisors; and (2) for reporting wrongdoing by Far West, FHLBS, and FHLBB to ORA (the regulatory arm of FHLBB). FHLBS moved for summary judgment on Walleri's § 1831j claim on the grounds that (1) Walleri's reports were not protected under § 1831j because she failed to "blow the whistle" to an agency listed in the statute; and (2) Walleri could not prove a causal link between her whistleblowing and FHLBS' termination of her employment. The district court held that Walleri's complaint did not allege a valid claim under § 1831j.
 
 
 17
 1. Section 1831j Claim Based on Reports to FHLBS.
 
 
 18
 Regarding Walleri's § 1831j claim based on Walleri's reports to her FHLBS supervisors, the district court held that, despite evidence that Walleri had reported wrongdoing to her supervisors at FHLBS, her complaint did not state a valid claim because it did not allege that she reported wrongdoing to FHLBS or that FHLBS retaliated against her in response to those reports. See E.R. at 124-25. In effect, the district court treated defendant's summary judgment motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.
 
 
 19
 Walleri argues that the district court's ruling was in error because the allegations in her fourth amended complaint adequately stated a § 1831j claim based on reports she made to FHLBS. In paragraph eleven of the complaint, Walleri alleged that her examination of Far West--a bank to which FHLBS had agreed to loan 1.5 billion dollars in connection with a Risk Controlled Arbitrage (RCA) program-revealed "irregularities, improprieties and possible illegal conduct by Far West." E.R. at 77 (emphasis added). In paragraphs twelve and thirteen, Walleri alleged that she prepared and submitted a report of examination (ROE) presenting those findings. And in paragraphs fourteen and nineteen, she alleged:
 
 
 20
 ... [FHLBS] employee defendants, in order to "quiet Walleri," repeatedly discouraged and interfered with the performance of [her] contractual duties through their threats to her that she would be removed as examiner-in-charge and be given an unacceptable performance rating and terminated if she did not delete certain significant exam findings which Far West said were inaccurate, incomplete or false statements.
 
 
 21
 E.R. at 80, Fourth Amended Complaint, p 14.
 
 
 22
 As a result of [her] refusal to agree to the deletion of facts and findings from her report of examination ... and as a result of her whistleblowing [to ORA of FHLBB] ..., [Walleri] was subjected to ... retaliatory treatment [including confrontational meetings and threats, removal as examiner-in-charge of the Far West examination, unacceptable performance ratings, refusal to make use of her when she was available for part-time work, and, ultimately, termination].
 
 
 23
 E.R. at 81-82, Fourth Amended Complaint, p 19 (emphasis added).
 
 
 24
 FHLBS, on the other hand, argues that the district court correctly ruled that Walleri's complaint failed to allege a claim based on reports to the FHLBS. It relies on paragraph 45 which stated:
 
 
 25
 Defendant [FHLBS] discriminated against [Walleri] with respect to conditions or privileges of employment ... because she provided information to federal banking agencies and the office of the Attorney General regarding possible violations of law or federal regulations by defendant Far West, its officers and directors, and employees of the [FHLBS and FHLBB].
 
 
 26
 E.R. at 93, Fourth Amended Complaint, p 45 (emphasis added).
 
 
 27
 In general, a complaint is construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "In appraising the sufficiency of the complaint we follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from well-pleaded facts. See Retail Clerks Local 1625 v. Schermerhorn, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963).
 
 
 28
 The facts alleged in paragraphs eleven through fourteen and paragraph nineteen of the complaint can reasonably be interpreted as alleging a claim that FHLBS discriminated against her in her employment because she provided information to FHLBS regarding possible illegal conduct by Far West. Although paragraph nineteen emphasizes that she was retaliated against because she would not change the contents of the report she submitted to FHLBS, it would be reasonable to infer that they retaliated against her not solely because she would not change the report, but because she "provided [the] information" in the report "regarding a possible violation of any law or regulation" to her FHLBS supervisors in the first place. See 12 U.S.C. § 1831j(a)(2). Thus, the factual allegations in Walleri's complaint adequately stated a § 1831j claim and put FHLBS on notice of her claim against it.
 
 
 29
 Having found that Walleri adequately alleged a § 1831j claim based on her report to FHLBS, we turn to whether the district court should have granted FHLBS's motion for summary judgment on this claim. Viewed in the light most favorable to Walleri, the evidence in the record establishes a triable issue of fact as to whether she was discriminated against in her employment as a result of the reports she submitted to her FHLBS supervisors. The court found, and FHLBS does not dispute, that the evidence shows that Walleri had reported wrongdoing to her supervisors at FHLBS. See CR 301 at 7-8. Moreover, FHLBS apparently does not dispute that FHLBS supervisors ordered Walleri to change her report and threatened to remove her from her position as examiner-in-charge if she failed to do so, that Walleri received unfavorable reviews after submission of her report, and that FHLBS ultimately discharged Walleri. The issue in dispute is whether Walleri produced sufficient evidence to raise a triable issue of fact as to whether FHLBS' stated reason for discharging Walleri was a pretext for retaliation. We find that she has.
 
 
 30
 FHLBS contends that it discharged Walleri because Walleri's leave of absence lasted longer than 90 days, and FHLBS' disability leave of absence policy required the termination of any employee whose leave exceeded 90 days. Walleri first submitted a letter from her doctor requesting medical leave on January 24, 1989. Walleri went on leave at that time. On April 11, 1989, Walleri submitted to FHLBS a letter from her doctor advising FHLBS that Walleri could return on a part-time basis but had to remain in the Portland area to continue treatment. On April 13, 1989, Walleri received a letter from Foltos of FHLBS stating that FHLBS did not have part-time work for Walleri at that time, but that she could begin part-time work in the beginning of May. On May 8, 1989, Walleri returned to work as instructed, but after completing all available part-time work she was sent home. The same occurred the next day. On the third day, May 10, 1989, FHLBS informed Walleri by letter that it had run out of work that could be done on a part-time schedule and she was therefore being returned to leave status. By the beginning of June, Walleri's leave of absence had exceeded 90 days. However, Walleri produced evidence that about that time she went to the FHLBS office and left a message for a supervisor, Mike Cline, that her doctor was releasing her to return to work full-time. See E.R. at 217-18. According to the deposition testimony of FHLBS Personnel Director, Lee Foltos, she and Mike Cline were aware of Walleri's message when the decision to terminate Walleri was made. Id. Foltos testified that when they were unable to reach Walleri by phone to confirm the message, she suggested to Mike Cline that Cline write a letter to Walleri about the possibility of her returning to work. Id. at 218-19. Cline failed to write the letter, however, and FHLBS proceeded to terminate Walleri on June 6.
 
 
 31
 We find that the testimony that FHLBS management was aware of Walleri's message that she was available to return to work full-time, yet discharged her for overstaying her leave, raises a triable issue of fact as to whether the reason given for her termination was a pretext.
 
 
 32
 We conclude that FHLBS was not entitled to summary judgment on Walleri's § 1831j claim arising out of her reports to her FHLBS supervisors.
 
 
 33
 2. Section 1831j Claims Based on Reporting to FHLBB.
 
 
 34
 The court below dismissed Walleri's claim that she was discharged in retaliation for making reports to the Office of Regulatory Affairs (ORA) of the Federal Home Loan Bank Board (FHLBB), because the FHLBB, the agency to which Walleri made her report, was not a "federal banking agency" as defined by the statute. E.R. at 121-25. Walleri urges that to carry out the intent of the act, it should be interpreted to include the FHLBB, as the predecessor of OTS. A contrary interpretation, she argues cogently, would make no sense since it would require her, to be entitled to protection, to have made the report she made in 1988 to OTS, which did not exist at the time.[1]
 
 
 35
 While Walleri's argument has appeal, it is insufficient to circumvent the words of the statute. Although we seek to give effect to the will of Congress in construing a statute, we begin with the words of the statute and must construe them according to their plain meaning. See FDIC v. McSweeney, 976 F.2d 532, 537 (9th Cir.1992), cert. denied, 508 U.S. 950, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). There is no legislative history to shed light on how Congress came to select the designated agencies; presumably, it did so because they were the only relevant agencies in existence when the statute was drafted. Congress may not have realized that the retroactivity provision in the statute made the definition section incomplete, but it is not for us to cure the deficiency by adding an agency which Congress chose not to-or, in any event, failed to-include. This claim therefore was properly dismissed. Since Walleri's report is not within the ambit of the statute, it is unnecessary to consider other issues raised by the parties.
 
 
 36
 Walleri also sought to assert this claim against OTS. Since OTS was never her employer and since no liability could be imposed on it as successor of FHLBB, which itself had no liability under the statute, that claim was also properly dismissed. E.R. at 51-54.
 
 
 37
 B. The State Law Wrongful Discharge Claim.
 
 
 38
 Walleri alleged that her discharge was wrongful under Oregon law. The court dismissed the claim on the ground that 12 U.S.C. § 1432(a) preempts the field. E.R. at 126-27. That section provides in relevant part that a Federal Home Loan Bank "shall have the power ... to select, employ, and fix the compensation of ... employees ... and to dismiss at pleasure such ... employees...." 12 U.S.C. § 1432(a). We have previously held that this section bars claims of wrongful discharge based on state law. Inglis v. Feinerman, 701 F.2d 97, 99 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); cf. Bollow v. Federal Reserve Bank, 650 F.2d 1093 (9th Cir.1981) (construing the same language under the Federal Reserve Act), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). This claim was properly dismissed.
 
 
 39
 C. The State Law Emotional Distress Claim.
 
 
 40
 Walleri also alleged a state law claim for emotional distress allegedly resulting from the manner in which her supervisors at FHLBS treated her. The court dismissed this claim on the ground that it was preempted by § 1432(a) as well. E.R. at 126-27. We do not think that the statutory power to dismiss at pleasure necessarily preempts claims based on an employer's wrongful act directed at the employee outside of the employment relationship. Here, however, the conduct complained of relates solely to the employment relationship. The fifth claim of Walleri's fourth amended complaint alleges that the conduct of defendants "as described in paragraphs 14 and 19, was intended to and did cause severe emotional distress to plaintiff" E.R. at 10-11, 90. Paragraph 14 alleges that defendants, "in order to 'quiet Walleri,' repeatedly discouraged and interfered with the performance of ... [Walleri's] contractual duties through their threats to her that she would be removed as examiner-in-charge and be given an unacceptable performance rating and terminated if she did not delete certain significant exam findings...." E.R. at 79-80. And paragraph 19 avers that "as a result of ... [Walleri's] refusal to agree to the deletion of facts and findings from her report of examination ... and of her whistleblowing ... [she] was subjected to the following course of retaliatory treatment": confrontational meetings with her supervisors, removal as examiner in charge, an unacceptable performance rating, denial of part-time work, termination from employment, and a cover-up of the results of her investigation. E.R. at 81-82.
 
 
 41
 Attaching the label of "intentional infliction of emotional distress" to these allegations does not alter the fact that they are all addressed to defendants' management of the employment relationship with Walleri. When § 1432(a) vested power in the Federal Home Loan Banks to "select, employ, and fix the compensation of ... [their] employees ... to define their duties ... and to dismiss [them] at pleasure ..." it left no room for oversight under state law over the manner in which that power is exercised. This claim was properly dismissed.
 
 
 42
 D. The State Law Defamation Claim.
 
 
 43
 Walleri alleged a state law defamation claim on the basis of a memorandum from FHLBS, signed by Faulstich, to the bank staff. The allegedly defamatory statements contained in the memorandum were (1) that Walleri was unable to return to work and that she was terminated for this reason; and (2) that her report of examination was incompletely, inaccurately and inadequately written. Pl. Op. Br.App. at 10. Walleri has conceded her status as a "public figure." The court below held that Walleri had failed to come forward with facts from which a reasonable jury could find that defendants had acted with actual malice, as required by New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). E.R. at 38-39.
 
 
 44
 To create liability for defamation, there must be a false and defamatory statement. A statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts §§ 558, 559 (1976). We fail to see how the first statement--that Walleri was terminated because she was unable to work--is defamatory in nature. Therefore, we find that Walleri could not have maintained a defamation claim based on that statement.
 
 
 45
 As to the second statement--that Walleri's report of examination was incompletely, inaccurately and inadequately written--Walleri admits that she "was, in fact, unable to submit any evidence at all" that the statement was made with actual malice. However, she argues that she was unable to do so, not because such evidence did not exist, but because at the time of the motion "discovery was still pending." Pl. Op. Br. at 37. While defendants' motion for summary judgment on the claim was pending, Walleri requested an extension of time (apparently of about one week) within which to file her response. E.R. at 63-69. The extension was granted. E.R. at 70. Walleri then asked for a continuance of the hearing on the motion for summary judgment so that she would have more time to complete discovery, which she needed to support her first amendment claim; Walleri said nothing in her application about the defamation claim. E.R. at 71-76. The motion for a continuance, which defendants opposed, was denied. E.R. at 87. In the absence of a request for additional discovery on this claim, and of any showing under Fed.R.Civ.P. 56(f) in support of such a request, the denial of the continuance was not an abuse of discretion.
 
 
 46
 Walleri having produced no evidence of actual malice, the district court properly granted defendants' motion for summary judgment on the defamation claim.
 
 IV. The Constitutional Claim
 
 47
 In her first claim, Walleri alleges that the individual defendants, employees of either FHLBS or FHLBB, violated Walleri's First Amendment right "to make her report of examination and carry out her ... duty to make a truthful, accurate and complete report of examination without interference and retaliation by the governmental and nongovernmental defendants." E.R. at 73, 85-86. The court below granted summary judgment to Faulstich because he was not a government actor. It granted summary judgment to the other defendants, on the assumption that they were acting in their capacity as government actors, on the ground of qualified immunity. E.R. at 40-45.
 
 
 48
 Walleri's claim is founded on Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which makes available a private action for monetary relief against federal officials for the violation of constitutional rights. A Bivens action will lie only against federal officials; to the extent Walleri complains about conduct by defendants in their capacity as Walleri's employers--i.e. acting for FHLBS--no claim could be stated. In light of our disposition of this claim, however, it is not necessary to pursue this issue further.
 
 
 49
 A Bivens action will not lie "when Congress has created 'comprehensive procedural and substantive provisions giving meaningful remedies against the United States....' " Janicki Logging Co. v. Mateer, 42 F.3d 561, 564 (9th Cir.1994) (quoting Bush v. Lucas, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983)). "Moreover, the fact that the courts could create a more complete remedy for the asserted wrong does not mean that they should, for 'Congress is in a better position to decide whether or not the public interest would be served by creating it.' " Id. In Bricker v. Rockwell Int'l Corp., 22 F.3d 871 (9th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994), we held that Congress' failure to extend the protection under the whistleblower legislation to the situation alleged in the plaintiff's claim precluded the court from implying a Bivens remedy. See also Kotarski v. Cooper, 866 F.2d 311 (9th Cir.1989). In the case before us, we hold that Walleri has an enforceable claim under § 1831j based on her reports to FHLBS, but that Congress failed to extend § 1831j whistleblower protection to cover Walleri's claim based on her reports to FHLBB.[2] Thus, we think the result must be the same as in Bricker and Kotarski. Congress has established a remedy for persecuted whistleblowers. As we have said, the fact that Congress could have provided a more complete remedy precludes us from implying one. The Supreme Court has "responded cautiously to suggestions that Bivens remedies be extended into new contexts.... When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." Schweiker v. Chilicky, 487 U.S. 412, 421, 423, 108 S.Ct. 2460, 2467, 2468, 101 L.Ed.2d 370 (1988).
 
 
 50
 V. Other Claims.
 
 
 51
 Our disposition of these claims makes it unnecessary for us to discuss other claims and cross-claims asserted by the parties.
 
 
 52
 We reverse with respect to Walleri's whistleblower claim against FHLBS and remand for appropriate proceedings and affirm in all other respects. Costs to appellants.
 
 
 53
 REVERSED in part, REMANDED in part and AFFIRMED in part.
 
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Walleri's report to the FBI cannot serve as the basis for a § 1831j claim because it was not made until after she was discharged
 
 
 [2]
 Walleri may also have administrative remedies. The parties have not advised us on this subject