Lisa WALLERI, et al., Plaintiffs,

v.

**FEDERAL HOME LOAN BANK OF SEATTLE; et al., Defendants.**

Civil No. 90–855–JO.

United States District Court, D. Oregon.

March 18, 1997.

Stevedoring by Gilco and the nature of the contract between Jones Stevedoring and Gilco.

Tomas F. Ryan, Portland, OR, Margaret Fiorino, Fiorino & Vacura, Portland, OR, for Lisa Walleri, Dan Walleri.

Jonathan T. Harnish, Bullard Korshoj Smith & Jernstedt, Portland, OR, Clay D. Creps, Bullivant Houser Bailey, Portland, OR, George W. Akers, Christopher L. Hirst, Montgomery Purdue Blakinship & Austin, Seattle, WA, Donald Sloan, Gibson Dunn & Crutcher, San Francisco, CA, for Federal Home Loan Bank of Seattle.

Donald Sloan, Gibson Dunn & Crutcher, San Francisco, CA, for Michael Cline, Ronald Karr, Steven Scott, Denny Halvorson, Daryl Dochow, M. Danny Wall, Far West Federal Bank, Donald Tisdel, David Nirenberg.

David J. Riewald, Jonathan T. Harnish, Bullard Korshoj Smith & Jernstedt, Portland, OR, George W. Akers, Montgomery Purdue Blakinship & Austin, Seattle, WA, Donald Sloan, Gibson Dunn & Crutcher, San Francisco, CA, for James Faulstich.

Frances C. Augello, M. Jefferson Davis, Office of Thrift Supervision, Washington, DC, for Office of Thrift Supervision, Dept. of the Treasury of the USA.

Charles H. Turner, Tarlow Jordan & Schrader, Portland, OR, Herbert C. Sundby, U.S. Attorneys Office, Portland, OR, Jeffrey L. Karlin, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, for USA.

John P. Davenport, Sussman Shank Wapnick Caplan & Stiles, Portland, OR, for Resolution Trust Corp.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiffs Lisa and Dan Walleri originally filed suit against defendant Federal Home Loan Bank of Seattle (FHLBS) and eleven other defendants claiming constitutional violations, wrongful discharge, defamation, intentional infliction of emotional distress, and violation of the whistleblower protections in 12 U.S.C. § 1831j arising from Ms. Walleri's discharge as examiner-in-charge from FHLBS. I granted judgment of dismissals or summary judgment to the defendants on all of plaintiffs' claims. Plaintiffs appealed, and the Ninth Circuit affirmed in part and reversed in part. All that remains of plaintiffs' original claims is Ms. Walleri's whistleblower claim against defendant FHLBS under 12 U.S.C. § 1831j.

On remand, this case is now before me on defendant FHLBS's motion (# 367) for partial summary judgment. Specifically, defendant asks that I rule that: (1) the 1991, not the 1993, version of 12 U.S.C. § 1831j applies to plaintiffs' remaining claim; and (2) plaintiffs' remaining claim applies only to "possible violations of any law or regulation" committed by Far West, not to "possible violations of any law or regulation" committed by FHLBS or other entities. For the reasons discussed below, I hereby GRANT de-

fendant's motion, with the clarification that plaintiffs' remaining claim must be based on the Report of Examination Ms. Walleri wrote regarding Far West and FHLBS's actions in response to it. Similarly, plaintiffs' allegations of violations by FHLBS in response to the Far West report are still part of this case. Finally, this case still includes the issue of whether FHLBS's reasons for firing Ms. Walleri were pretextual.

## RELEVANT FACTS

The relevant facts are not at issue in this case. Congress enacted the predecessor of section 1831j in 1989, as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Public Law No. 101–73, 103 Stat. 193 (Dec. 17, 1993). As originally enacted, section 1831j provided that:

> No federally insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding a possible violation of any law or regulation by the depository institution or any of its officers, directors, or employees.

12 U.S.C. § 1831j(a)(2) (1989).

In 1991, Congress amended the provision to extend whistleblower protections to the employees of federally insured banking institutions. Moreover, it explicitly provided that the amendment took effect as of January 1, 1987, before plaintiffs' claims arose. The 1991 version of section 1831j provided that:

> (1) No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding any possible vio-

lation of any law or regulation by the depository institution or any director, officer, or employee of that institution.

> (2) No Federal banking agency, Federal home loan bank, or Federal Reserve bank may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation by—

>> (A) any depository institution or any such bank or agency;

>> (B) any director, officer, or employee of any depository institution or any such bank; or

>> (C) any officer or employee of the agency which employs such employee.

12 U.S.C. § 1831j(a) (1991).

Congress again amended section 1831j in 1993 to expand the statute's coverage. However, Congress did not provide for a retroactive effective date as in 1991. The current version [1] of the federal banking whistleblower statute, incorporating the 1993 amendment, provides that:

> (1) No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal Banking agency or to the Attorney General regarding—

>> (A) a possible violation of any law or regulation; or

>> (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial specific danger to public health or safety by the depository institution or any director, officer, or employee of the institution.

---

**1.** Congress also made very minor punctuation changes to section 1831j in 1994. Pub.L. 103–325, § 602(a)(61), (c), 108 Stat. 2291 (Sept. 23, 1994). These are of no consequence to the current motion.

(2) No Federal banking agency, Federal home loan bank, Federal reserve bank, or any person who is performing, directly or indirectly, any function or service on behalf of the Corporation may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety by—

(A) any depository institution or any such bank or agency;

(B) any director, officer, or employee of any depository institution or any such bank;

(C) any officer or employee of the agency which employs such employee; or

(D) the person, or any officer or employee of the person, who employs such employee.

12 U.S.C. § 1831j(a) (1993).

Under all versions of the statute, employees and former employees can and could file a civil action in federal district court within two years of the discharge or discrimination. 12 U.S.C. § 1831j(b). The Walleris initially filed their complaint in 1990. At issue, however, is the scope of their Fourth Amended Complaint after remand. In that complaint, filed March 29, 1993, plaintiffs Lisa and Dan Walleri allege that FHLBS had employed Ms. Walleri from January 1986 to June 1989. They further allege that in April 1988, FHLBS assigned Ms. Walleri to be the examiner in charge of the examination of Far West Federal Savings Bank. As a result, she incurred a duty to prepare and sign a report of the examination only if it represented findings based on facts.

Plaintiffs allege that in the course of her examination of Far West between April and May, 1988, Ms. Walleri and her examiners discovered irregularities, improprieties, and possibly illegal conduct by Far West. Plaintiffs further allege that Ms. Walleri then prepared a report based on these discoveries, which, after revision, was submitted on July 15, 1988.

Plaintiffs allege that various employees of FHLBS threatened to remove Ms. Walleri as examiner-in-charge if she did not delete certain findings from her examination. Moreover, they allege that on October 11, 1988, Michael Cline handed Ms. Walleri a revised report that deleted or substantially changed certain information about Far West and told Ms. Walleri that she had to sign the revised report or be terminated as the examiner in charge of the Far West job. Ms. Walleri, plaintiffs allege, refused to sign the revised report and was removed as examiner-in-charge on October 12, 1988.

Plaintiffs allege that between October 11, 1988 and June 6, 1989, Ms. Walleri notified the Office of Regulatory Affairs of the Federal Home Loan Bank Board (ORA) of what had occurred concerning the Far West report. The ORA, plaintiffs assert, investigated the matter and determined that Ms. Walleri's report had been accurate. Ms. Walleri was terminated at FHLBS on June 6, 1989.

According to plaintiffs, on October 25, 1990, Ms. Walleri testified before the Congressional Committee of Urgent Fiscal Affairs. On October, 26, 1990, plaintiffs allege, James Faulstich, President of FHLBS, circulated a letter about Ms. Walleri with the intent to retaliate against her for this testimony. Moreover, plaintiffs assert, the letter was defamatory.

Based on these allegations, plaintiffs claimed that defendants had violated Ms. Walleri's First Amendment rights, had wrongfully discharged Ms. Walleri under Oregon law, had defamed Ms. Walleri, had intentionally inflicted emotional distress, had caused loss of society and companionship to Mr. Walleri, and had violated the whistleblowing provisions of 12 U.S.C. § 1831j. I granted summary judgment on the constitutional and defamation claims and on the whistleblower claim based on the Far West reports, dismissed plaintiffs' other whistleblower claims because the reports at issue were not included within the scope of section 1831j, dismissed the state law wrongful dis-

charge and emotional distress claims on grounds of federal preemption, and dismissed the loss of consortium claim based on a lack of a predicate claim by Ms. Walleri.

In reviewing this court's decision, the Ninth Circuit upheld the grants of summary judgment or dismissal for all claims except the federal whistleblower claim. *Walleri v. Federal Home Loan Bank of Seattle,* 83 F.3d 1575, 1583–84 (upholding grant of summary judgment on constitutional claims), 1582 (upholding the dismissal of the state wrongful discharge and emotional distress claims), 1582–83 (upholding the grant of summary judgment on the state law defamation claim), 1584 (upholding dismissal of all other claims) (9th Cir.1996). It is the scope of the Ninth Circuit's remand on plaintiffs' whistleblower claim that is now the subject of this motion.

First, the Ninth Circuit held that the 1991 amendments to section 1831j apply to plaintiffs' whistleblower claim. *Walleri,* 83 F.3d at 1579. The Ninth Circuit did not, however, explicitly discuss the 1993 amendments.

Second, the Ninth Circuit defined the scope of plaintiffs' whistleblower claims as follows:

> Walleri brought § 1831j claims against both FHLBS and OTS [Office of Thrift Supervision]. Walleri alleged that FHLBS violated § 1831j by retaliating against her for two reasons: (1) for reporting irregularities and possible illegalities involving Far West to her FHLBS supervisors; and (2) for reporting wrongdoing by Far West, FHLBS, and FHLBB [Federal Home Loan Bank Board] to ORA [Office of Regulatory Affairs] (the regulatory arm of FHLBB).

*Walleri,* 83 F.3d at 1579.

Third, the Ninth Circuit held that plaintiffs had, in their Fourth Amended Complaint, stated a claim under section 1831j. *Walleri,* 83 F.3d at 1580. Its holding depended upon the following allegations from that complaint:

> In paragraph eleven of the complaint, Walleri alleged that her examination of Far West—a bank to which FHLBS had agreed to loan 1.5 billion dollars in connection with a Risk Controlled Arbitrage (RCA) program—revealed "irregularities,

improprieties, and *possible illegal conduct* by Far West." E.R. at 77 (emphasis added). In paragraphs twelve and thirteen, Walleri alleged that she prepared and submitted a report of examination (ROE) presenting those findings. And in paragraphs fourteen and nineteen, she alleged:

> ... [FHLBS] employee defendants, in order to "quiet Walleri," repeatedly discouraged and interfered with the performance of [her] contractual duties through their threats to her that she would be removed as examiner-in-charge and be given an unacceptable performance rating and terminated if she did not delete certain significant exam findings which Far West said were inaccurate, incomplete or false statements.

E.R. at 80, Fourth Amended Complaint, ¶ 14.

> *As a result of [her] refusal to agree to the deletion of facts and findings from her report of examination ...* and as a result of her whistleblowing [to ORA of FHLBB] ... [Walleri] was subject to ... retaliatory treatment [including confrontational meetings and threats, removal as examiner-in-charge of the Far West examination, unacceptable performance ratings, refusal to make use of her when she was available for part-time work, and, ultimately, termination].

E.R. at 81–82, Fourth Amended Complaint; ¶ 19 (emphasis added).

*Walleri,* 83 F.3d at 1579–80.

Fourth, regarding the grant of summary judgment on plaintiffs' whistleblower claims, the Ninth Circuit held that, for the claim based on *reports to FHLBS,* "the evidence in the record establishes a triable issue of fact as to whether she was discriminated against in her employment as a result of the reports she submitted to her FHLBS supervisors." *Walleri,* 83 F.3d at 1580. Moreover, "[w]e find that the testimony that FHLBS management was aware of Walleri's message that she was available to return to work full-time, yet discharged her for overstaying her leave, raises a triable issue of fact as to whether the reason given for her termination was a pretext." *Id.* at 1581. As a result, "FHLBS was not entitled to summary judgment on

Walleri's § 1831j claim arising out of her reports to her FHLBS supervisors." *Id.*

Nevertheless, the Ninth Circuit upheld this court's dismissal of plaintiffs' section 1831j claims based on reporting to the ORA of the FHLBB. I had dismissed those claims because the FHLBB was not a "federal banking agency" as defined by statute. The Ninth Circuit agreed, holding that "Walleri's report is not within the ambit of the statute * * * ." In addition, the Ninth Circuit disallowed plaintiffs' section 1831j claim to the extent that it was based on Walleri's report to the FBI. "Walleri's report to the FBI cannot serve as the basis for a § 1831j claim because it was not made until after she was discharged." *Walleri,* 83 F.3d at 1581 n. 1.

## DISCUSSION

### A. Standard for Summary Judgment

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *United Steelworkers of Amer. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

Here, there is no dispute as to the relevant facts. Instead, resolution of defendant's motion depends upon the scope and effect of the Ninth Circuit's opinion in this case and upon the potential retroactive effect of the 1993 amendments to section 1831j. These are issues of law and I can properly resolve them on summary judgment.

### B. Scope of Plaintiffs' Section 1831j Claim

■■■ "The law of the case doctrine states that the decision of an appellate court on a legal issue 'must be followed in all subsequent proceedings in the same case.'" *Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir.1985), *cert. denied* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986) (quoting *Planned Parenthood v. Arizona,* 718 F.2d 938, 949 (9th Cir.1983), *aff'd* 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 346 (1986), and citing *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 833–34 (9th Cir.1982)). Moreover, "[t]he law of the case controls unless the first decision is clearly erroneous and would result in manifest injustice, there has been an intervening change in the law, or the evidence on remand is substantially different." *Id.* at 593 (citing *Planned Parenthood,* 718 F.2d at 949).

Neither party argues that one of the exceptions applies here. Indeed, plaintiffs concede that they cannot assert a claim inconsistent with the Ninth Circuit's decision. Therefore, plaintiffs' remaining whistleblower claim is limited to that left by the Ninth Circuit.

The Ninth Circuit was clear as to the scope of that claim. Plaintiffs cannot assert liability based on Ms. Walleri's reports to the ORA of the FHLBB or based on her report to the FBI. *Walleri,* 83 F.3d at 1581–82. She also cannot assert liability against OTS. *Id.* at 1582. Instead, plaintiffs' remaining claim must be based on Ms. Walleri's reports to her FHLBS supervisors. *Id.* at 1579.

The reports still at issue are the Report of Examination Ms. Walleri wrote about Far West and other reports she gave to her FHLBS supervisors about the Far West examination. *Walleri,* 83 F.3d at 1579–80; Fourth Amended Complaint ¶¶ 12, 13. The Report of Examination discussed "possible illegal conduct by Far West." *Id.* at 1579; Fourth Amended Complaint ¶ 11. Defen-

dant FHLBS's alleged violations of law relating to this report arise from its alleged attempts to force Ms. Walleri to alter the Far West Report of Examination and its alleged retaliatory behavior as a result of her alleged refusal to do so. *Id.* at 1580; Fourth Amended Complaint ¶¶ 14, 19. Therefore, the claim, as the Ninth Circuit defined it, is that:

> FHLBS discriminated against her in her employment because she provided information to FHLBS regarding possible illegal conduct by Far West. Although paragraph nineteen emphasizes that she was retaliated against because she would not change the contents of the report she submitted to FHLBS, it would be reasonable to infer that they retaliated against her not solely because she would not change the report, but because she "provided [the] information" in the report "regarding a possible violation of any law or regulation" to her FHLBS supervisors in the first place.

*Walleri,* 83 F.3d at 1580. In addition, there is a triable issue as to whether defendant terminated Ms. Walleri for legitimate, non discriminatory reasons. *Id.* at 1581.

I therefore hold that plaintiff's claim is limited to her Report of Examination on Far West, to reports to her supervisors concerning this examination, and to defendant's alleged actions regarding that report. There are no motions before me regarding specific evidence that might be used to make or defend against this claim, and thus this opinion should not be construed as an evidentiary ruling. Instead, I will make evidentiary rulings in response to appropriate motions in limine by the parties.

### C. Retroactivity of the 1993 Amendments

■ Plaintiff has apparently conceded that the 1991 version of section 1831j should apply to this case. Its concession is in accord with the law of retroactivity as it would apply to this case.

"[S]tatutory retroactivity has long been disfavored * * *." *Landgraf v. USI Film Products,* 511 U.S. 244, 268, 114 S.Ct. 1483, 1498, 128 L.Ed.2d 229 (1994). Moreover, even though "constitutional impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule." *Id.* at 272, 114 S.Ct. at 1501. In general, moreover, clear congressional intent is required before a statute will be applied retroactively. *Id.*

■ In view of these principles, the Supreme Court has outlined retroactivity analysis as follows:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent to favor such a result.

*Id.* at 280, 114 S.Ct. at 1505. More succinctly, "the test of retroactivity is *'whether the new provision attaches new legal consequences to events completed before its enactment.'*" *United States Securities Exchange Comm'n v. Fehn,* 97 F.3d 1276, 1285 (9th Cir.1996) (quoting *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499 (emphasis added by Ninth Circuit)).

In this case, however, a prior question is whether the Ninth Circuit has already addressed this issue. The Ninth Circuit did hold that the 1991 version of section 1831j applied to plaintiffs' whistleblower claim. *Walleri,* 83 F.3d at 1579. Moreover, on appeal the parties briefed the retroactivity issue to the court. APPELLANTS' BRIEF at 29, Defendant's Ex. D, p. 11; APPELLEE/CROSS-APPELLANT'S BRIEF at 20 n. 23, Defendant's Ex. E, p. 6. Thus, although the Ninth Circuit did not address the 1993 statute in its opinion, it did address whether plaintiffs had stated a claim with reference to the 1991

statute after having been made aware that an argument existed as to which version of the statute applied.

Nevertheless, the issue of which version of the statute applied was not clearly before the Ninth Circuit and it is therefore not clear that the 1991 statute applies as law of the case. I therefore turn to the issue of congressional intent.

No cases address the retroactivity of the 1993 amendments to section 1831j. Nevertheless, the history of that statute makes clear that when Congress wanted to make the statute's provisions retroactive, it clearly did so. Thus, in 1991, Congress stated that section 1831j (a) "shall be treated as having taken effect on January 1, 1987 * * *." Pub.L. 102–242, § 251(a)(4), 105 Stat. 2332. No such provision accompanies the 1993 amendment, Pub. Law 103–204, § 21, even though Congress did include specific effective dates in other sections of the same law. See, e.g., Pub.L. 103–204, § 19. Therefore, Congress did not clearly indicate that the 1993 amendments should have a retroactive effect. Indeed, by its silence, it appears to have intended just the opposite.

Moreover, the 1993 amendments if applied here would have a retroactive effect. Procedural changes generally do not raise concerns about retroactivity. *Landgraf,* 511 U.S. at 274–76, 114 S.Ct. at 1502; *Marks v. Solcum,* 98 F.3d 494, 496 (9th Cir.1996) (holding that a statute that "merely affects the ability of prisoners to maintain appeals in forma pauperis" does not raise retroactivity concerns). Here, however, the 1993 amendments would attach new legal consequences to events.

First, the 1993 amendments expand FHLBS's potential liability for events already completed. Under the 1991 version of section 1831j, plaintiff can recover for retaliation caused by a report about "a possible violation of any law or regulation." The 1993 statute, by contrast, would allow recovery for retaliation caused by a report about "a possible violation of any law or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." If applied, therefore, the 1993 version of section 1831j could render defendant liable for completed conduct for which, under the 1991 version of the statute, it was not previously liable.

■ Second, the 1993 amendments effectively change the applicable burden of proof. Burdens of proof are generally considered substantive, not procedural, aspects of law. *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959); *Johnston v. Pierce Packing Co.,* 550 F.2d 474, 476 n. 1 (9th Cir.1977). The 1991 statute did not contain a burden-of-proof provision. As a result, the few courts to address the issue looked to the analogous anti-retaliation provisions in Title VII of the Civil Rights Act of 1964 and applied the three-step burden shifting analysis common to federal discrimination claims. *Ellis v. NCNB Texas Nat'l Bank,* 842 F.Supp. 243, 245–47 (N.D.Tex.1994); *Harrington v. First Indep. Corp.,* Civil No. 92–CV–71530–DT, at 6–8 (E.D.Mich. October 16, 1992); *O'Connell v. River Forest Bank,* 1993 WL 276787 *3, 1993 LEXIS 10524, at *3 (N.D.Ill.1993). This "borrowing" from Title VII, moreover, is typical of courts left without congressional guidance as to the burden of proof for federal statutory retaliation claims. *See Kahn v. United States Secretary of Labor,* 64 F.3d 271, 277–79 (7th Cir.1995) (applying the Civil Rights burden shifting to whistleblower retaliation claims under the Energy Reorganization Act of 1974, 42 U.S.C. § 5851).

Under this burden shifting, plaintiff has the initial burden of establishing a prima facie case, including a *causal connection* between her actions and the employer's response. If she does, then defendant must come forward with a legitimate, nondiscriminatory reason for the alleged adverse employment actions. If defendant meets its burden, then plaintiff must come forward with evidence that defendant's explanation is pretextual and that retaliation was the *real motivation* for the alleged adverse actions. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 511 n. 4, 515, 113 S.Ct. 2742, 2747–48, 2749 n.4, 125 L.Ed.2d 407 (1993).

In the 1993 amendments, by contrast, Congress added a burden of proof provision that

provides that "[t]he legal burdens of proof that prevail under subchapter III of chapter 12 of Title 5 shall govern adjudication of protected activities under this section." 12 U.S.C. § 1831j(f) (1991). Under the referenced statute, a plaintiff employee can obtain relief by proving that the "disclosure * * * was a *contributing factor* in the personnel action which was taken or is to be taken against" that employee or former employee. 5 U.S.C. § 1221(e)(1) (emphasis added). In response, the defendant can avoid liability only if it "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).

Compared to the Title–VII–type burden shifting, the 1993 burdens of proof create a much heavier burden for defendants trying to avoid liability. Only one published opinion has discussed this change, but the court found that change to be significant, precluding summary judgment when summary judgment could have been granted under the Title–VII–type burden shifting. *Rouse v. Farmers State Bank of Jewell, Iowa,* 866 F.Supp. 1191, 1207 (N.D.Iowa 1994).

Looking at 5 U.S.C. § 1221(e), the Northern District Court of Iowa concluded that its

allocation of burdens differs significantly from that applied to Title VII cases in two respects. First, in establishing a *prima facie* case, the plaintiff under either 12 U.S.C. § 1831j or 5 U.S.C. § 1221(e) must establish that his or her whistleblowing was "a contributing factor" in adverse employment actions rather than demonstrating "a causal connection" between engaging in protected activity and adverse employment actions as in a Title VII case. Second, while the defendant in a Title VII action may rebut the presumption of retaliation by *producing* evidence of a legitimate, non-retaliatory reason for the employment action taken, the defendant under the whistle-blower statutes must *demonstrate by clear and convincing evidence* that it would have made the same employment decision in the absence of plaintiff's disclosures.

*Rouse,* 866 F.Supp. at 1208. As a result, the court noted, "[t]he burden on the plaintiff in

a whistleblower case appears to be less than that upon a plaintiff in a Title VII case, and that on the defendant is heightened." *Id.*

I agree with the Northern District Court of Iowa's analysis. Thus, the 1993 version of section 1831j attaches new legal consequences to events completed in 1990, and in two ways: it makes defendant potential liable for a broader range of responses, and it makes it easier for plaintiffs to meet their burden of proof. As such, the 1993 amendments would operate retroactively if applied to the case at hand, and the amendments' legislative history suggests that Congress did not intend for them to have a retroactive effect. Therefore, I apply the traditional presumptions against retroactivity. The 1993 amendments do not apply to this case, and defendant is entitled to summary judgment on this issue. The case will proceed in light of the traditional, Title–VII–type burden shifting.

### CONCLUSION

Defendant's motion (# 367) for partial summary judgment is granted as explained above. Again, I emphasize that this opinion is not an evidentiary ruling and should not be construed as such. The parties remain free to submit appropriate motions in limine regarding particular evidence, and I encourage them to do so.