they may have to appeal the court's order adopting this recommendation.

Dated September 4, 1996.

**Panchita Hodgers DURGIN, et al., Plaintiffs,**

v.

**Gustavo DE LA VINA, et al., Defendants.**

**No. CV 95–029 TUC JMR.**

United States District Court,
D. Arizona.

June 23, 1997.

Salese & McCarthy, P.C., Armand Salese, Tucson, AZ, for Plaintiffs.

Janet Napolitano, U.S. Atty., Dist. of Arizona, Jennifer C. Guerin, State Bar No. 013243, Asst. U.S. Atty., Tucson, AZ, Frank W. Hunger, Asst. U.S. Atty., Civil Div., David J. Kline, Deputy Director, Brenda Ellison, Jane Gomez, Karen Herrling, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for Defendants.

### ORDER

ROLL, District Judge.

Pending before the Court are Plaintiffs' Motion to Reconsider Class Certification, Defendants' Motion for Reconsideration of Denial of Defendants' Motion to Dismiss Second Amended Complaint, and Defendants' Motion to Dismiss Third Amended Complaint.

For the reasons set forth below, (1) Plaintiffs' Motion to Reconsider Class Certification is granted, but class certification is denied; (2) Defendants' Motion to Dismiss Third Amended Complaint, construed as a motion for summary judgment, is granted; and (3) Defendants' Motion for Reconsideration of Denial of Defendants' Motion to Dismiss Second Amended Complaint is denied as moot.

## Background

This is an action for declaratory and injunctive relief. It was originally filed by Plaintiff Durgin, who was the subject of a traffic stop by United States Border Patrol agents in October 1994. Defendant De la Vina is a supervisory Border Patrol official.

Plaintiff Durgin alleges that Border Patrol agents in southern Arizona routinely make traffic stops without articulable suspicion, thereby violating the Fourth Amendment. Plaintiff Durgin also alleges that the Border Patrol unlawfully targets some motorists based on impermissible profiles, and these profiles are authorized and sanctioned by those in authority in the Border Patrol.

Plaintiff Durgin originally moved for class certification on July 25, 1995. On November 2, 1995, that motion was denied with leave to reurge the motion once additional factual development had occurred as a result of discovery. Plaintiff Lopez was added as a party in the Third Amended Complaint, filed September 9, 1996. He also alleges that Border Patrol stopped him without sufficient cause based on an impermissible profile, to wit, his Hispanic appearance.

Plaintiffs now reurge that this case should be certified as a class action. Plaintiffs ask that the class consist of (1) everyone travelling on state highways at night in southern Arizona counties; and (2) everyone of Hispanic appearance travelling at any time on those highways.[1]

Plaintiffs seek a declaration by the Court that the Border Patrol has engaged in unconstitutional behavior and an injunction proscribing the unconstitutional practices alleged by Plaintiffs.

Defendants object to the class certification and seek dismissal of the entire action.

## PLAINTIFFS' MOTION TO RECONSIDER CLASS CERTIFICATION

█ In order to certify a class, four factors need to be shown under Rule 23(a), Fed.R.Civ.P.:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For the reasons set forth below, due to an absence of commonality and typicality, the proposed class certification is inappropriate.

### A. Commonality

There must be common questions of law or fact for a class to be certified. Plaintiffs assert that whether Border Patrol agents routinely make traffic stops without founded suspicion, sometimes based upon illegal profiles, is the common question of fact presented here.

For example, Plaintiffs contend that in deciding whether to stop a vehicle, Border Patrol agents consider the ethnicity of the driver.

Although Plaintiffs suggest that ethnicity is an impermissible factor for agents to consider, the case law does not support their position. The courts have consistently held that the ethnicity of the driver may be considered as a factor by agents, but that it is an insufficient basis for stopping a vehicle if it is the only factor considered. *United States v.*

---

1. Specifically, Plaintiff would define the class as

   █ all persons who have been, are, or will be travelling at night by motor vehicle on the highways of the State of Arizona, within the counties of Cochise, Graham, Greenlee, Maricopa, Pima, Pinal, Santa Cruz and Yuma; and

   █ all persons who are of Latin, Hispanic or Mexican appearance who have been, are, or will be travelling by motor vehicle on the highways of the State of Arizona, within the counties of Cochise, Graham, Greenlee, Maricopa, Pima, Pinal, Santa Cruz and Yuma.

Motion to Reconsider Class Certification, p. 1.

The second part of this class definition is modeled after that certified by the District Court in *Nicacio v. I.N.S.*, 595 F.Supp. 19 (E.D.Wash. 1984), *aff'd* 797 F.2d 700 (9th Cir.1985). The class certified there was: "All persons of Mexican, Latin, or Hispanic appearance who have been, are, or will be traveling by motor vehicle on the highways of the State of Washington."

*Brignoni–Ponce,* 422 U.S. 873, 884–87, 95 S.Ct. 2574, 2581–83, 45 L.Ed.2d 607 (1975); *Orhorhaghe v. Immigration and Naturalization Service,* 38 F.3d 488, 498 (9th Cir.1994); *United States v. Magana,* 797 F.2d 777, 781 (9th Cir.1986). In *Brignoni–Ponce,* the Supreme Court stated that "Mexican appearance [is] a relevant factor, but standing alone it does not justify stopping all Mexican–Americans to ask if they are *aliens.*" *Brignoni–Ponce,* 422 U.S. at 887, 95 S.Ct. at 2583. Obviously, this Court lacks authority to rule otherwise.

Exhibits submitted in connection with pending motions include a variety of official memoranda and refresher course materials issued to Border Patrol agents which admonish the agents against using unlawful profiles for stopping vehicles.[2] The materials specifically remind agents that "apparent Hispanic or Mexican ancestry alone will not justify a vehicle stop."[3] Further, no official memoranda indicate that Border Patrol agents have been instructed to utilize impermissible profiles in stopping people along the highways of southern Arizona.[4]

Because there is no evidence that Border Patrol agents have been authorized by Border Patrol supervisors to utilize impermissible profiles, the Court has several concerns with regard to the commonality of the class as proposed by Plaintiffs. A primary concern is that the proof of injury to the class would be a broad and difficult one to establish. The proof would require presentation of testimony from a large number of people

who are ostensibly members of the class, who would describe their individual stops, from which the Court would be asked to infer a pattern and practice of unlawful stops.[5] Defendants would be entitled to present each agent involved in every stop to explain the purported articulable suspicion. The number of such witnesses is potentially staggering. For example, the sample radio logs submitted by Plaintiffs in their Motion to Reconsider Class Certification include between 534 and 682 stops by Border Patrol agents,[6] which number represents stops during approximately 60 days over a 12 month period.[7]

For the above reasons, there does not appear to be a clear common question of fact or law upon which a class could be certified. The Court's concerns about the absence of commonality also merge with concerns about the typicality of the Plaintiffs.

**B. Typicality**

Plaintiffs assert that their claims are typical of the purported class. Defendants respond that no individual Plaintiff is "typical" of another in this particular case. Defendants argue that the absence of typicality is illustrated by differences between the circumstances surrounding the stop of Plaintiff Durgin and that of Plaintiff Lopez. Plaintiff Durgin testified at deposition that she was stopped at approximately 1:00 a.m. after she had been driving her vehicle at fluctuating speeds due to an apparent mechanical problem with her vehicle.[8] Because it was dark

---

**2.** Reply to Motion for Reconsideration ("Reply") at 7–10, and exhibits thereto.

**3.** Exhibit 6 to Reply at 6; Exhibit 9 to Reply at 6. The language of this exhibit directly reflects the language of the Supreme Court in *Brignoni–Ponce,* 422 U.S. at 886, 95 S.Ct. at 2582–83.

**4.** It is appropriate to note, however, that the Court is troubled by the I–44s presented from the Sonoita Station of the Border Patrol. Plaintiffs' Motion to Reconsider Class Certification at 19–20. Many of the agents' statements in the I–44s indicate that, in deciding to stop certain vehicles, agents relied heavily on the ethnicity of the occupants of the vehicles.

**5.** Although Plaintiffs have presented the I–44s of many stops in their Motion to Reconsider Class Certification, those constitute incomplete evi-

dence as to the totality of circumstances surrounding each stop.

**6.** Declaration of John F. Patterson, Jr., Exhibit 12 to Opposition to Motion to Reconsider Class Certification ("Opposition") at 1.

**7.** Exhibits 44–49 of Motion to Reconsider Class Certification. The logs represent stops made between 10/8/94–10/23/94, 1/1/95–1/31/95, 5/25/95–5/31/95 and 9/22/95–9/29/95.

**8.** Q. So coming up this road, this is I–19, your car was stopping and starting the whole time?
A. Not stopping completely, kind of slowing down very, very slow, like—let's say if I was driving 55, all of a sudden came to 45, 40 and then starts all over again 50, 55.
Deposition of Panchita Durgin, Exhibit 1 to Opposition ("Durgin Deposition"), at 39. The post-

and because she states that she is not of Hispanic appearance, race could not have been a factor motivating agents to stop her vehicle.[9] The one time Plaintiff Lopez was stopped, in January 1995, was at dusk after he changed lanes to pass a Border Patrol agent who had just pulled in front of him on Interstate 19.[10] Plaintiff Lopez, unlike Plaintiff Durgin, alleges that he was stopped "due to his Hispanic appearance."[11] Therefore, even the two named Plaintiffs have very different factual claims and cannot be said to be typical of one another, let alone of an entire class. To a greater or lesser degree, every traffic stop would present unique circumstances.[12]

Also troubling is the fact that the new class definition actually attempts to combine two classes of potential plaintiffs into this case: all night-time drivers in southern Arizona, *and* all southern Arizona drivers of Hispanic appearance. This grouping is an enormously broad one.

### C. Remaining requirements

Because of the absence of commonality and typicality of Plaintiffs herein, the last two elements of class certification, adequacy of representation and numerosity, need not be addressed.

### D. Relief sought

It is significant that even if the Court were to certify the class and Plaintiffs were awarded precisely the declaratory and injunctive relief they seek, the relief obtained would be nothing more than a re-affirmation of Su-

preme Court and Ninth Circuit case law interpreting Fourth Amendment principles applicable to founded suspicion stops. Future individual plaintiffs would still be required to prove that they had been subjected to unconstitutional stops. Thus, further reviews on a case-by-case basis would not be prevented by certifying the class proposed here, nor would any new statement of the law be provided.

Because the requirements for a class action are absent here, Plaintiffs' motion for class certification is again denied.

### DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

Defendants argue that this case should be dismissed. Although Defendants' motion is styled as a motion to dismiss, both Defendants and Plaintiffs submitted materials pertaining to the motion that went beyond the pleadings themselves. Therefore, the Court construes the motion to dismiss as a motion for summary judgment.[13]

### A. Standard

Summary judgment is proper where no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, the Court considers the pleadings, depositions, answers to interrogatories, affidavits and admissions on file. Fed.R.Civ.P. 56(c).

---

ed speed limit in this area was 65 miles per hour. *Id.*

9. Durgin Deposition at 49–51.

10. Deposition of Antonio Lopez, Exhibit 2 to Opposition ("Lopez Deposition"), at 26–33.

11. Plaintiffs' Motion to Reconsider Class Certification at 49.

12. For example, one car was stopped apparently just because the agent "could see five young Hispanic males in the car," and the car was travelling on Highway 83, "a commonly used smuggling route." Opposition at 19 (Sonoita Station). Another car was stopped after the

agent observed it "riding low in the rear," *and* the agents could see "two or three adult males slouching down in the back seat of the vehicle as if trying to conceal themselves." Opposition at 14 (Tucson Station). The differences between just these two examples is notable, and the evidence presented includes countless variations summarily described in the I–44s of hundreds of stops.

13. *See Grove v. Mead School District No. 354,* 753 F.2d 1528, 1533 (9th Cir.1985) ("A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment.")

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact, but the moving party need not support its motion with affidavits or other supporting materials. Fed.R.Civ.P. 56(a); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that an issue of fact remains to be tried. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party may not rest on mere denials of movant's pleadings, but must respond asserting specific facts showing a genuine issue exists precluding a grant of summary judgment. Fed. R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The Court must accept the non-movant's evidence as true and view all inferences in the light most favorable to the non-movant. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987).

Thus, summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990) (quoting *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552).

### B. Analysis

■ Defendants maintain that Plaintiffs lack standing for the injunctive relief they seek because there has been no showing that Plaintiffs are likely to be stopped again by Border Patrol.[14] Defendants made this same argument about Plaintiff Durgin when the initial motion for class certification was filed in 1995. Defendants moved to dismiss the complaint, relying on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Their theory was that Plaintiff Durgin needed to establish standing individually, separate from the standing of the class, and under *Lyons* she could not do this.

*Lyons* involved a plaintiff who sued the Los Angeles Police Department ("LAPD") for injunctive relief because he had been stopped and subjected to a chokehold, which made him lose consciousness and which damaged his larynx. He sought an injunction directing the LAPD to cease use of the chokehold. The Supreme Court held that the plaintiff lacked standing to bring the claim seeking prospective injunctive relief because he could not show that he was likely to be subjected to a chokehold again. With regard to plaintiff's standing, the Supreme Court stated:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles always choke any citizen ... or (2) that the City ordered or authorized police officers to act in such manner.

461 U.S. at 105–06, 103 S.Ct. at 1667.

In the instant case, this Court rejected Defendants' standing argument, focusing upon whether the class that Plaintiff Durgin purported to represent had standing:

> The Ninth Circuit has construed *Lyons* in a class action setting in *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir.1985). There, the court made explicit that the relevant standing inquiry focuses not on individual class members but the class as a whole ... this approach was explicitly reaffirmed in *Nicacio v. I.N.S.*, 797 F.2d 700, 702 (9th Cir.1985): "we look not merely to the possibility of injury to one individual, but to the foreseeability of harm to members of an entire class." Therefore, defendants' challenge to plaintiff's standing as an individual must fail.[15]

■ Defendants reurge the standing argument now, however, because the Supreme Court has since decided *Lewis v. Casey,* —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606

---

14. It is appropriate to raise standing in a motion for summary judgment. *See, e.g., Wyoming v. Oklahoma,* 502 U.S. 437, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992); *Sanders v. City of San Diego,* 93 F.3d 1423 (9th Cir.1996).

15. Order of November 2, 1995.

(1996). In *Lewis,* the Supreme Court overturned a district judge's comprehensive injunction imposed on the Arizona Department of Corrections concerning inmates' access to the prison library. The Supreme Court rejected the systemwide injunction because there were only two proven instances of injury based on the existing prison library procedures and "[t]hese two instances were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief." —— U.S. at ——, 116 S.Ct. at 2184. Defendants here argue that, even assuming Border Patrol caused Plaintiffs some injury in the two stops presented, those injuries do not state a case or controversy warranting declaratory and injunctive relief of the type that Plaintiffs are seeking.

Certain facts not in dispute tend to establish that reoccurrence is unlikely for these Plaintiffs. Plaintiff Durgin lives in Rio Rico, a small town between Tucson and the border city of Nogales. She has travelled regularly along Interstate 19, the sixty mile highway connecting Tucson and Nogales, at least five times a week for the past ten years, and has been stopped by Border Patrol just one time, that being the stop involved in this matter.[16] The unusual circumstances surrounding the stopping of her vehicle have already been discussed.[17] Plaintiff Durgin is unaware of any incidents in which Border Patrol has stopped her family or friends along the highways of southern Arizona.[18]

Plaintiff Lopez, who also has been stopped by Border Patrol only once, has driven nearly 500 miles per week on Interstate 19 and Interstate 10 for over four years. Additionally, Plaintiff Lopez does not know anyone else who has been pulled over by Border Patrol on the highways of southern Arizona.[19]

The Court agrees with Defendants that neither Plaintiff has demonstrated that they are likely to be stopped by Border Patrol again.[20] Therefore, applying the standard set forth above, summary judgment should be granted Defendants. It is important to note that dismissing this action does not preclude Plaintiffs from obtaining relief. Plaintiffs may always pursue a *Bivens* action[21] for constitutional violations by federal agents. As stated in *Lyons:*

> [W]ithholding injunctive relief does not mean that the "federal law will exercise no deterrent effect in these circumstances." If [plaintiff] has suffered an injury barred by the Federal Constitution, he has a remedy for damages under 5 1983. Furthermore, those who deliberately deprive a citizen of his constitutional rights risk conviction under the federal criminal laws.

461 U.S. at 112–13, 103 S.Ct. at 1671 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974)). Therefore, both Plaintiffs Durgin and Lopez, as well as any other person who has been subjected to an unconstitutional seizure, have a remedy.

Because summary judgment is granted, Defendants' Motion for Reconsideration of Denial of Defendants' Motion to Dismiss Second Amended Complaint is moot.

## CONCLUSION

For the reasons set forth above, class certification is not appropriate in this case. Further, because Plaintiffs have not suffi-

---

**16.** Although Plaintiff Durgin indicated that she was stopped in October 1994, she herself was unable to specify the exact date of the stop. Durgin Deposition at 32.

**17.** *See supra* p. 472.

**18.** Durgin Deposition at 56–57.

**19.** Lopez Deposition at 41.

**20.** This case is thus distinguishable from *Nicacio v. United States Immigration and Naturalization Service,* 797 F.2d 700 (9th Cir.1985). There, the certified class of all drivers of Mexican, Latin or Hispanic appearance was affirmed. In *Nicacio,* the evidence showed that "several of the plaintiff class members had actually experienced repeated stops which the court found to have been violative of their rights. The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Id.* at 702.

**21.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* authorizes "a private action for monetary relief against federal officials for the violation of constitutional rights." *Walleri v. Federal Home Loan Bank of Seattle,* 83 F.3d 1575, 1583 (9th Cir.1996).

ciently established they are at risk of being stopped again by Border Patrol, it is appropriate to grant summary judgment in favor of the Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Reconsider Class Certification is **GRANTED,** but the motion for class certification itself is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Third Amended Complaint, construed as a motion for summary judgment, is **GRANTED.** This case is **DISMISSED** and **JUDGMENT** shall be entered accordingly.

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration of Denial of Defendants' Motion to Dismiss Second Amended Complaint is **DENIED** as moot.