**RALEIGH HEIGHTS HOMEOWNERS PROTECTIVE ASSOCIATION,**
**Plaintiff,**

v.

**CITY OF RENO; Reno Housing Authority; Moon Landrieu, Secretary; Department of Housing and Urban Development, and the United States of America, Defendants.**

**Civ. No. R–80–161–ECR.**

United States District Court,
D. Nevada.

Nov. 14, 1980.

Woodburn, Wedge, Blakey & Jeppson, Reno, Nev., for plaintiff.

John R. Petty, Reno, Nev., for defendants, City of Reno.

Shirley Smith, Asst. U.S. Atty., Reno, Nev., for defendant, Landrieu.

## ORDER

REED, District Judge.

Plaintiff is a nonprofit corporation composed of citizens residing in the vicinity of what is known as the Raleigh Heights area of Reno, Nevada.

In this action, according to the prayer of the complaint, plaintiff seeks:

1. To enjoin and mandate the Secretary of Housing and Urban Development (HUD) to require the City of Reno (City) to prepare, file and circulate an environmental impact statement (E.I.S.) or an environmental review record (E.R.R.), prior to further release of federal funds for the construction of a proposed housing project (the project) which is the subject of these proceedings. Plaintiff also seeks an order requiring defendants to otherwise comply with the procedural requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331, *et seq.*, the Housing and Community Development Act of 1974 (HCDA), 42 U.S.C. § 5304, *et seq.*, and other applicable statutes and regulations, including particularly those requiring an opportunity for full and effective public participation in development of environmental statements and reports pertaining to the project. The proposed housing project in question is to be constructed for low and moderate income residents on a 26–acre site adjacent to Raleigh Heights. The City is now in the process of developing the project and applying to HUD for federal funds for that purpose.

2. For a declaratory judgment that the City and the Secretary, in taking previous steps toward the construction of the project have violated NEPA, HCDA and the Administrative Procedures Act (APA). 5 U.S.C. § 706(2)(B), (C).

Jurisdiction of the Court is invoked under 5 U.S.C. § 706(2)(B), (C); 28 U.S.C. § 1331(a); 28 U.S.C. § 1361; and 28 U.S.C. § 2201–02.

The matter is now before the Court on a Motion for a Preliminary Injunction against further release of federal funds for the project unless compliance is had with applicable federal laws and regulations pertaining to environmental concerns as set forth and outlined in paragraph 1 above. A hearing on the motion was held before the Court on September 22, 1980. Evidence and testimony were received at that time.

Based on the record before the Court, plaintiff has good cause to be concerned as to whether the applicable laws and regulations will be complied with in defendants' future activities relating to the project. However, there would be little use to be served in the Court entering a judgment declaring that the prior procedures were unlawful, or, on account of what has occurred, enjoining defendants to follow the law and regulations in the future. As to the past, plaintiffs' motion does not seek relief in respect to what is essentially water under the bridge. So far as the future is concerned, the Court and plaintiffs are entitled to expect that there will be such compliance, without the necessity of an injunction.

It is conceded that there is a substantial need for low and moderate income housing in the Reno area. Federal funds are available through HUD to assist in construction of a project for this purpose. The law and regulations which make such funds available mandate compliance with procedures for protection of environmental quality before release of funds may be made for such a project. It is to be emphasized that it is the steps leading to the proposed release of the federal funds for such a project which trigger the requirements that an E.I.S. or E.R.R. be prepared and notices given seeking public input and participation. By the terms of the statutes and regulations, it is not what is done with the funds after release by HUD which requires compliance with the environmental study regulations.

On November 7, 1978, the City, having determined the need for such low and moderate income housing, published a notice in a Reno newspaper indicating its intent to request release of federal funds under HCDA for purposes of acquiring land to develop such a project. The location of the project in the notice was simply stated as "City of Reno" and the cost as "$500,000." No specific location for the project is stated in the notice. Possibly the City did have a particular site in mind at that time, but the

notice did not so indicate and, in any event, either because the site selected may have become unsuitable or unavailable, later chose to acquire the site at Raleigh Heights for these purposes. The fact is the City didn't even know the Raleigh Heights site existed when the November, 1978, E.R.R. was prepared and notice of it published. It is therefore clear that the November, 1978, E.R.R. and accompanying notice could not have referred to the Raleigh Heights property, which became the subject of the project much later.

The notice, which was published in November, 1978, stated that it had been determined the then intended request for release of funds would not significantly adversely affect human environment and hence no E.I.S. would be prepared; and, further, that an E.R.R. had been made for the project. The E.R.R. was stated to be on file and available for inspection at an office of the City. Written comments were solicited from persons disagreeing with the "no significant adverse effect" determination, and it was stated that such comments would be considered by the City and the City would not request release of funds for a period of two weeks.

No evidence of this November, 1978, E.R.R., supposedly supporting the release of funds in November, 1978, is before the Court. The E.R.R. which is put forward by the City to support the project was not prepared until June and July of 1979, some seven months later. The Court can only speculate as to the contents of the E.R.R. referred to in the November, 1978, notice. We can only guess as to whether the E.R.R. referred to a particular site for the project or merely the City at large. While the Truckee Meadows Valley in which Reno is situated is probably not more than ten miles in width and maybe fifteen miles in length, many varying types of environments are found within the area where the project might have been located, based on the general (in the "City of Reno") description contained in the notice. Environmental conditions in that wide area include everything from steep, barren, mountainous hillsides to low swampy areas, with all possible varie-

ties of intensity of population settlement. The quality of air and water (and other natural conditions) also vary widely over the valley.

In the view of the Court a notice that said a project of this magnitude would be located in "Reno," without specifying any particular location was an exercise in futility and did not meet notice requirements mandated by 24 C.F.R. Part 58 for release of the federal funds. You just can't judge the effect on the environment if you don't know where the project is going to be located. The notice given has to be defective on that basis.

There appears to be no express provision in the statute or regulations to remedy a situation, as occurred here, where federal funds have been released to a state or local agency for use for a particular project at a particular site, which becomes unfeasible, and where it is desired for that reason to move the site of the project to a different location. Part 58 does not appear to contain any provision, requiring an E.R.R. or E.I.S. after the release of funds, where the location of the Project is subsequently changed.

No notice of the new July, 1979, E.R.R., which is before the court, was ever published, nor did the new E.R.R. effect any release of federal funds for the project. The requirement of an E.R.R. or E.I.S., as contemplated in the regulations which apply here, is in anticipation of release of funds for a particular project at a particular site. Since here the funds released were used for acquisition of a different site than that anticipated by the November, 1978, E.R.R., in that sense these regulations were not complied with. Such a utilization of funds circumvents the procedures established by NEPA, 42 U.S.C. § 4332, which have been designed to accomplish the vital purpose of NEPA.

Under 42 U.S.C. § 5304(h), (i) and (h)(3)(D), a grant applicant, here the City, assumes the role of the responsible "Federal official" required by the regulations to undertake the responsibilities for environmen-

tal review, decision making, and action pursuant to NEPA. The applicant under (h)(3)(D) also consents to the jurisdiction of the federal courts for the purpose of enforcement of his responsibility as such an official. *See, Colony Federal Savings and Loan Association v. Harris*, 482 F.Supp. 296 (W.D.Pa.1980); *Lathan v. Brinegar*, 506 F.2d 677 (9th Cir. *en banc* 1974).

It appears there exists a continuing duty of an applicant to insure that federal regulations are complied with even after the release of funds. Further, the release of funds does not relieve HUD from its duty to insure that these funds will be used in conformance with the guidelines established by NEPA. Under the HCDA, 42 U.S.C. § 5304(c)(3) and the Administrative Procedures Act (APA) 5 U.S.C. § 706(2)(B), (C), HUD has an obligation to see that procedural requirements are met and applicable federal regulations followed. *Colony Federal, supra; Lathan, supra*. Once put on notice that the funds released were to be used for a purpose other than for which they had been approved, the federal authorities had an affirmative obligation to insure that the new use of the money was proper and complied with federal regulations.

Some attempt was made by both the City and HUD to comply with at least the spirit of these environmental regulations. When the problem of a new or changed site surfaced, HUD advised the City to prepare a new E.R.R. for the new location before buying the land. This was done and the new report completed in July, 1979. No provision was made, however, for giving public notice of the new E.R.R., or for participation of the public in addressing environmental concerns relating to the new project site. After the E.R.R. was finalized in July, 1979, escrow closed and the federal funds previously received by the City from HUD, were paid out to acquire the twenty-six acre site at Raleigh Heights.

The present action was not commenced until July, 1980, almost a year later.

In the summer of 1979, the Raleigh Heights parcel having been acquired, appropriate zoning and major project review for the location of the project there were approved by the Regional Planning Commission and the Reno City Council. Preliminary architectural plans were prepared. The new E.R.R. of July, 1979, mentioned above and completed about the same time made a finding that the request "for release" of funds to be made in accordance therewith would not be an action significantly affecting the quality of human environment and that no E.I.S. would be required. Clearly this July, 1979, E.R.R. is talking about site acquisition and release of funds therefor, rather than the construction and further development of the project. Curiously, the July, 1979, E.R.R. itself indicates, however, that the notice of request for release of funds, to which it is addressed, had been published some seven months previously and that the funds for the site acquisition considered by it had been previously released some six months before.

Viewing the matter from the standpoint of the letter of the statute and regulations, the July, 1979, E.R.R. served no purpose, because the funds to which such E.R.R.s are addressed had already been released and the obtaining of the release of funds would have had to have been the reason for preparation of such an E.R.R. in the first place. The environmental review records (E.R.R.) required by 24 C.F.R. Part 58 are clearly prerequisites to *release* of federal funds. The release of federal funds for the site acquisition, to which the July, 1979, E.R.R. was addressed, had long since previously occurred. The horse had already been let out of the barn.

If the intent of the July, 1979, E.R.R. was to satisfy the spirit of the law and regulations, only half or less or the spirit requirement was met, because no notice of preparation of the July, 1979, report was given, nor was any public participation allowed.

Since the July, 1979, E.R.R. looks back and does not address itself to the further release of federal funds for development

and construction of the project (which it is anticipated will be the next occasion for request for release of federal funds), there is no real point in the Court adjudicating whether it complies with the requisites of 24 C.F.R. Part 58.

Further release of federal funds to construct the project will require completion of an additional E.R.R. or E.I.S., pursuant to 24 C.F.R. 50. Those regulations specifically require an additional E.I.S. or E.R.R. prior to release of HUD funds for conventional low rent housing assistance under 42 U.S.C. § 1437, *et seq.* The new review, coupled with the required notices, will provide an effective opportunity for public participation. If the project goes ahead to a construction phase, plaintiff and the citizens it represents will have the opportunity to participate and to air their environmental concerns.

IT IS, THEREFORE, ORDERED that the Motion for Preliminary Injunction is denied at this time.