ATLANTIC TERMINAL URBAN RE- NEWAL AREA COALITION, John Theodore Glick, Anne McClellan, Loraine Oliver, and Mildred Davis, Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION; New York City Public Development Corporation; New York City Board of Estimate; Edward I. Koch; Harvey W. Schultz; New York City Planning Commission; Sylvia Deutsch; United States Environmental Protection Agency; William K. Reilly; United States Department of Housing and Urban Development; and Jack F. Kemp, Defendants.

No. 87 Civ. 4242(MEL).

United States District Court, S.D. New York.

April 17, 1989.

Edward Copeland, Elizabeth St. Clair, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiffs.

Benito Romano, Acting U.S. Atty., S.D. N.Y., New York City, for defendants U.S. Dept. of Housing and Urban Development and Jack F. Kemp, as Secretary, U.S. Dept. of Housing and Urban Development; Richard W. Mark, Asst. U.S. Atty., S.D.N.Y., of counsel.

LASKER, District Judge.

In a decision of September 29, 1988, the motion of the Department of Housing and Urban Development and its Secretary ("HUD") to dismiss the fourth claim of plaintiffs' complaint, charging it with violation of § 176(c) of the Clean Air Act ("CAA"), 42 U.S.C. § 7506(c), was denied without prejudice. *Atlantic Terminal Urban Renewal Area Coalition v. New York City Dep't of Envtl. Protection,* 697

F.Supp. 666 (S.D.N.Y.1988). HUD moves for reconsideration of that decision.[1]

In the claim at issue, the plaintiffs allege that, by granting preliminary approval of a grant application for construction of the Atlantic Terminal and Brooklyn Center Projects ("the Project"), HUD violated § 176(c) of the CAA, which prohibits a federal agency from supporting an activity that does not conform to an approved state implementation plan ("SIP"). Plaintiffs allege that the City has not, as the SIP requires, assured that mitigation measures will be adopted to ensure compliance with the CAA's carbon monoxide standard. HUD argued then, as it does now, that plaintiffs failed to state a claim upon which relief could be granted because HUD had delegated its responsibility to review the Project's environmental impact to the grant applicant pursuant to 42 U.S.C. § 5304(f).[2] Although the CAA duties were found to be delegable, the motion was denied on the ground that an October 16, 1986 letter of the EPA, a copy of which was sent to HUD, that stated that the mitigation plans for the Project as then proposed did not meet CAA requirements and thus could not receive EPA approval, "put HUD on notice that the environmental review record in this case does not presently comply with HUD regulations."[3] *Id.* at 671.

HUD contends that, by construing this letter as notice that triggered the agency's responsibilities to monitor the Project's compliance with the CAA, *id.* at 673, the decision imposed upon HUD the very duties Congress authorized it to delegate. According to HUD, the decision of September 29th thereby eviscerated the delegation provisions of § 104(f).

Admittedly, HUD's duty to monitor the Project's CAA compliance is not so clearly procedural as were its duties recognized in *Raleigh Heights Homeowners v. Reno*, 501 F.Supp. 269 (D.Nev.1980) (finding HUD had obligation to require new environmental review where project site changed), and *Colony Fed'l Sav. & Loan Ass'n v. Harris*, 482 F.Supp. 296 (W.D.Pa.1980) (finding HUD had duty to ensure notice was provided interested parties). However, the duty articulated in the September 29th decision was not intended to impose upon HUD an obligation to evaluate the conclusions of the applicant's environmental impact statement, but rather to require HUD to ensure that those conclusions, on their face, reflected compliance with the Act.

However, even if the EPA letter provides a basis for holding HUD morally responsible in some sense for any ultimate decision to fund the Project, it does not affect HUD's legal accountability. With or without the letter, HUD has persuasively argued in the context of this motion that its presence as a party in the case is not necessary to assure that the plaintiffs are afforded full relief, namely to ensure that

1. I decline for two reasons to dismiss the motion as untimely. First, as HUD points out, the motion can be construed as a renewal of HUD's earlier motion to dismiss. Second, even if viewed as a motion to amend the judgment, I stated at a conference that I was "perfectly willing to waive" the ten day time limitation. Transcript of November 10, 1988 at 23.

2. Section 104(f) of Title I of the Housing and Community Development Act of 1974, 42 U.S.C. § 5304(f)(1), states in relevant part:

In order to assure that the policies of the National Environmental Policy Act of 1969 and other provisions of law which further the purposes of such Act ... are most effectively implemented in connection with the expenditure of funds under this chapter ... the Secretary, in lieu of the environmental protection procedures otherwise applicable, may under regulations provide for the release of funds

for particular projects to recipients of assistance ... who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to such Act....

3. In addition, the decision noted that there was a "serious question whether HUD [could] relinquish responsibility for compliance with the environmental statutes until the [grant applicant] certifies ... that it has complied with the environmental review responsibilities specified in 42 U.S.C. § 5304(f)(1)." 697 F.Supp. at 673. In the context of a later motion, HUD persuasively argued, contrary to this dicta, that HUD relinquishes its environmental review responsibilities when the grant applicant agrees to accept, rather than when it completes, the environmental review responsibilities. *Atlantic Terminal Urban Renewal Area Coalition v. New York City Dep't of Envtl. Protection*, 705 F.Supp. 988, 996–997 (S.D.N.Y.1989).

the plaintiffs' challenges to the environmental soundness of the Project are heard and resolved prior to the actual disbursement and use of funds from HUD. Plaintiffs' allegations that the Project would, if built, violate the CAA and National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, are presently before the court. Moreover, in addition to a possible opportunity to raise these objections with HUD prior to its action on the request for release of funds, 24 C.F.R. § 58.75(c) and (d), the plaintiffs may seek "redress [from the grant applicant] in relation to environmental reviews covered by an approved certification," 24 C.F.R. § 58.77(a). Thus, even if HUD approves a grant for a project found not to conform to the Act, the applicant, not HUD, is answerable. Finally, because the funds are not released simultaneously with the approval of the request for release of funds and of the applicant's certification that it has complied with the applicable environmental statutes,[4] there will be an opportunity, in connection with that process, for plaintiffs to seek an order enjoining release or use of the funds.[5]

HUD's motion to reargue is granted and, on reargument, the complaint against it is dismissed without prejudice.

It is so ordered.

---

**4.** Letter of Richard W. Mark, Assistant United States Attorney, Southern District of New York, to Judge Morris E. Lasker (April 11, 1989).

**5.** It appears, however, that HUD continues to retain a duty, even after the request for release of funds is approved, to ensure compliance with procedural requirements. *Raleigh Heights*

*Homeowners v. Reno,* 501 F.Supp. 269, 273 (D.Nev.1980) (finding HUD had continuing duty to ensure compliance with federal regulations, even after funds were released; in that case, HUD had obligation to ensure that applicant undertook a new environmental review after project location changed).