James B. TYLER; Mary Ann Hartman; James F. Durfee; Edward A. Johnson; Andrew L. Solow, Plaintiffs–Appellants,

v.

Henry CISNEROS, Secretary, United States Department of Housing and Urban Development; City and County of San Francisco, a Municipal Corporation; Mission Housing Development Corporation, a California Corporation; 1010 SVN Associates, a California Limited Partnership; California Department of Parks and Recreation; Vincent Marsh, Secretary, San Francisco Landmarks Preservation Advisory Board, Defendants–Appellees.

No. 97–15005.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1997.

Decided Feb. 10, 1998.

---

Andrea C. Ferster, Washington, DC, Laurel S. Stanley, Stanley & Rose, Berkeley, CA, for plaintiffs-appellants.

James C. Kilbourne and Sean H. Donahue, Department of Justice, Washington, DC, for appellee Cisneros.

Joseph M. Freschi, Deputy City Attorney, San Francisco, CA, for defendant-appellee City and County of San Francisco.

Harry E. Turner and Eric S. Miller, O'Melveny & Myers, San Francisco, CA, for defendants-appellees Mission Housing Development Corporation and 1010 SVN Associates.

Before: HUG, Chief Judge, WALLACE and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiffs James B. Tyler, et al., are homeowners who live in an area of San Francisco immediately surrounding the site of a low-income housing project to be constructed with federal funds. Plaintiffs argue that defendants-the Department of Housing and Urban Development ("HUD"), City and County of San Francisco ("City"), Mission Housing Development Corporation ("Mission Housing"), and 1010 SVN Associates-failed to meet the terms of their own Memorandum of Agreement ("the Agreement"), which was designed to mitigate the project's impact on plaintiffs' homes. Because all but one of plaintiffs' homes were eligible for inclusion on the National Register of Historic Places, plaintiffs sought a preliminary injunction against the project under the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f, and the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4332. The District Court denied the preliminary injunction and granted defendants' motion to dismiss, holding that both the NHPA and NEPA claims were mooted by the federal agency's disbursement of funds to the local agency.

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 703. This court has jurisdiction under 28 U.S.C. § 1291 to review the district court's judgment. We reverse and remand to the district court for further proceedings.

I

Background

In 1994, Mission Housing began planning a low-income housing project to replace two fire-damaged commercial buildings in San Francisco's Mission District. Mission Housing received federal funding under two programs-the Home Investment Partnerships Program ("HOME funds") and the Housing Opportunities for People with AIDS Program ("HOPWA funds"). Both of these federal funding programs are administered by HUD, a defendant in this action. HUD committed $1,500,000 in HOME funds to the developer through the City Mayor's Office of Housing, and it supplied $1,000,000 in HOPWA funds through the San Francisco Redevelopment Agency. Both of the federal funding programs contain environmental review requirements. See 24 C.F.R. Part 50, 24 C.F.R. Part 58. Pursuant to the delegation provision of 42 U.S.C. § 12838, the City assumed responsibility for NHPA and NEPA compliance before receiving the HOME funds. As to the HOPWA funds, HUD retained the responsibility for NHPA and NEPA compliance as required under 24 C.F.R. § 50.10.

The City and HUD reviewed the housing project under both NHPA and NEPA. In the course of the NHPA review, the City determined that the project might have an adverse impact on properties eligible for inclusion on the National Register of Historic Places. In order to mitigate that impact and comply with Section 106 of the NHPA, the City and

HUD entered into a Memorandum of Agreement with the federal Advisory Council on Historic Preservation and the State of California. The Agreement included procedures to incorporate public objections in order to ensure that the project remained compatible with the historical and architectural qualities of the surrounding homes.

The City and HUD conducted the NEPA review concurrently with the NHPA review. In the course of the NEPA review, the City prepared an environmental assessment, which recommended that the Agreement be included as a condition to project approval. Based on this environmental assessment, the City published a Notice of Finding of No Significant Impact on the Environment ("FONSI") along with a notice to the public of intent to release the HOME funds. This notice stated that no environmental impact statement would be required because the mitigation measures in the Agreement would adequately address any adverse effects on the environment. HUD then issued its own FONSI with respect to the HOPWA funds, similarly including the Agreement as a condition to project approval.

The City then certified that it had fulfilled its NEPA and NHPA obligations and made a formal request for the release of HOME funds. The City and HUD accepted comments on the FONSIs they issued for the HOME and HOPWA funds. HUD formally released these funds to the City after determining that the City's premature withdrawal of HOPWA funds did not warrant a different action.

Between November 1995 and July 1996, Mission Housing submitted architectural plans to the various City planning agencies for review. Plaintiffs raised objections to the plans, urging that changes be made to minimize the project's incompatibility with the surrounding neighborhood. The plans were approved notwithstanding these objections.

On August 23, 1996, plaintiffs brought suit in the U.S. District Court for the Northern District of California, alleging violations of NHPA, NEPA, the APA, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. The suit named HUD, the City, and Mission Housing as defendants.[1] Soon after filing the complaint, plaintiffs filed a motion for a preliminary injunction, seeking to enjoin any further activity on the project. The defendants filed motions to dismiss the plaintiffs' complaint.

The district court denied plaintiffs' motion for a preliminary injunction and granted defendants' motions to dismiss. *Tyler v. Cisneros,* No. CV–96–03056–VRW, 1996 WL 723083 (N.D.Cal. Dec. 2, 1996). The district court ruled that the plaintiffs' NHPA claims were moot because the NHPA contained an "implicit statute of limitations," which barred assertion of NHPA claims as to both the HOPWA and HOME funds after HUD's release of those funds to the City. 1996 WL 723083, at *4. The district court went on to rule that, even if there was no implicit statute of limitations in the NHPA, the plaintiffs' claims would fail because HUD no longer exercised "continuing authority" over the funds. *Id.* at *5.

Similarly, the district court ruled that the plaintiffs' NEPA claims were moot because HUD had "ceased to exercise continuing authority over the Van Ness Project for NEPA purposes" once it had disbursed the HOPWA funds. *Id.* at *7. As to the HOME funds, the district court ruled that any NEPA enforcement action against HUD could only be brought during the mandatory fifteen-day "comment period" preceding allocation of the HOME funds. *Id.* at *8. The district court ruled that a lawsuit brought after the 15–day period could only be viable if HUD exercised continuing authority over the HOME funds following their allocation. *Id.* Because the plaintiffs' lawsuit was brought after the fifteen-day period had expired, and because the district court ruled that HUD did not exercise continuing authority over the HOME funds, the district court dismissed this claim as moot. *Id.* Finally, the district court dismissed plaintiffs' claims against the City as delegatee of the environmental review re-

---

**1.** The State of California was dismissed as a defendant, and the parties do not challenge this order.

sponsibilities under the HOME program. The court ruled that the grant recipients' obligations under NEPA terminate when the federal agency decides to release funds.[2]

## II

## Analysis

### A. Standard of Review

A district court's dismissal for failure to state a claim is reviewed de novo. *See California CNG, Inc. v. Southern California Gas Co.*, 96 F.3d 1193, 1196 (9th Cir.1996). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The complaint must be construed favorably to the plaintiff, and the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from well-pleaded facts. *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir.1996). In reviewing district court decisions, this court may affirm on any ground having support in the record. *See Gemtel Corp. v. Community Redevelopment Agency of Los Angeles*, 23 F.3d 1542, 1546 (9th Cir.1994).

### B. Implicit Statute of Limitations under the NHPA

The core requirement of the NHPA is contained in Section 106. This section provides the general process by which a federal agency must comply with the NHPA:

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion

in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470v of this title a reasonable opportunity to comment with regard to such undertaking.

In dismissing the plaintiffs' NHPA claims with regard to both the HOPWA and HOME funds, the district court concluded that, while Section 106 contained no express statute of limitations, it did contain something akin to an "implicit statute of limitations." *Tyler*, 1996 WL 723083, at *4 (HOPWA funds), *5 (HOME funds). The district court noted that Section 106 required the federal agency to consider the effect of the undertaking "prior to the approval of any Federal funds." *Id.* The court read this language to mean that:

the federal agencies' responsibilities are 'cut-off' and that a lawsuit may no longer be brought under NHPA, when HUD has exercised its authority to approve project funding, *see Morris County Trust For Historic Preservation v. Pierce*, 714 F.2d 271, 280 (3rd Cir.1983); *WATCH v. Harris*, 603 F.2d 310, 319 (2d Cir.1979), or when the recipient enters into a grant contract with HUD, *see, e.g., Hart v. Denver Renewal Authority*, 551 F.2d 1178, 1181 (10th Cir.1977).

*Id.* at *4.

However, the cases that the district court cites do not hold that there is an "implicit statute of limitations" that bars plaintiffs from bringing suit after federal funds are disbursed. Rather, these cases deal with the applicability of the NHPA to properties that were not included within NHPA's ambit until after the initial release of federal funds. In *Morris County Trust*, 714 F.2d at 281–282, the Third Circuit held that Section 106 applied where HUD continued to fund a project after the NHPA was amended to cover the historical site at issue. In *WATCH*, 603 F.2d at 319, the Second Circuit held that Section 106 applied where a property became eligible for inclusion on the National Register before HUD had finally approved the expenditure of

---

**2.** The district court also dismissed plaintiffs' APA, due process, and 42 U.S.C. § 1983 claims.

*Id.* at *10–*11. Plaintiffs do not appeal these rulings.

funds at each stage of the undertaking. Finally, in *Hart*, 551 F.2d at 1180, the Tenth Circuit held that Section 106 did not apply where a property was not eligible for inclusion on the National Register until after the approval of the expenditure of federal funds was finalized.

A more common sense reading of Section 106 suggests that the "prior to" language merely refers to the timing of agency compliance. *See* 36 C.F.R. § 800.3(c) ("Section 106 requires the Agency Official to complete the section. 106 process prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license or permit."). In other words, this language establishes the time during which the agency is required to conduct an NHPA review, not the time during which a plaintiff is required to bring a lawsuit. This is a more natural reading of *Morris County, WATCH*, and *Hart*, where the courts were dealing with the issue of whether the agency was required to conduct an NHPA review, not the issue of whether the plaintiffs' claims were time-barred.

Indeed, construing Section 106 to bar all NHPA actions after the release of federal funds would run counter to the implied private right of action to file claims under the NHPA. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3rd Cir.1991) (recognizing private right of action under NHPA). An implicit statute of limitations could create a situation where cases are dismissed as unripe before disbursement of federal funds and dismissed as moot after disbursement of federal funds, leaving virtually no window of opportunity for a private enforcement action.

Furthermore, this court has never held that an implicit statute of limitations bars plaintiffs from bringing suit under the NHPA once federal funds have been disbursed. Rather, this court has applied the equitable doctrine of laches to resolve the timeliness of both NHPA and NEPA claims. In *Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir.1994), this court applied the doctrine of laches to bar a lawsuit brought two years after the issuance of the challenged permit, where the plaintiffs failed to participate in the Section 106 or NEPA processes. The court specifically held that "the laches standard used in NEPA cases should apply to [plaintiff's] NHPA claim and that the district court erred in failing to rely upon this standard." *Id.* at 906.

The district court therefore erred in holding that the NHPA contained an implicit statute of limitations.

### C. Continuing Agency Authority under NEPA and the NHPA

■ The district court went on to hold that, even if no implicit statute of limitations barred the plaintiffs' claims, the claims were not justiciable because HUD had no continuing authority over the project and could not demand the changes necessary to redress plaintiffs' grievances.

This holding was in error. The plain language of the NEPA and NHPA regulations states that HUD may have some continuing authority because it is a party to the Agreement. Under NEPA, the Supreme Court has made clear that an environmental impact statement is adequate even where it does not require the agency to actually mitigate adverse environmental impacts or obtain assurances that third parties will do so. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352, 109 S.Ct. 1835, 1847, 104 L.Ed.2d 351 (1989). However, the NEPA regulations state that, if an agency does decide to enter into a mitigation measure, that measure "shall be implemented." The NEPA regulations provide that:

> Mitigation ... and other conditions established in the environmental impact statement or during [the agency's] review *and committed* as part of the decision *shall be implemented* by the lead agency or other appropriate consenting agency. The lead agency shall:
>
> (a) Include appropriate conditions in grants, permits or other approvals.
>
> (b) Condition funding of actions on mitigation.
>
> * * *

40 C.F.R. § 1505.3 (emphasis added).

A similar rule applies under the NHPA. The Fourth Circuit in *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287 (4th Cir.1992) recognized that, while an agency is not required to enter into a Memorandum of Agreement, once it has done so, "it has voluntarily assumed an obligation that is en-

forceable...." *Id.* at 1290 n. 8 (citing 36 C.F.R. § 800.6(c), which states that an agency "shall carry out the undertaking in accordance with the terms of the agreement" and that failure to do so requires the agency to resubmit the undertaking to the Advisory Council for comment).

HUD had continuing authority over the project because the Agreement provided that:

> If any of the signatories to this Agreement believes that the terms of this Agreement cannot be carried out ... that signatory shall immediately notify the other signatories and request consultation to amend this Agreement.

Thus, if HUD believed that the terms of the Agreement could not be carried out, it had the obligation to request consultation.

However, HUD's obligation did not extend further than the terms of the Agreement because the environmental review process was complete and the plaintiffs have no quarrel with the adequacy of those reviews. [Blue, at 15–16.] At most, the plaintiffs will be able to enforce an agreement whereby HUD is to engage in consultation. On remand, the district court should decide whether such consultation was indeed warranted.

### D. Liability of the City as Delegatee

■ The district court dismissed plaintiffs' NHPA and NEPA claims against the City with respect to the HOME funds, ruling that the City's federal environmental review responsibilities ceased once federal involvement in the project ceased. *Tyler,* 1996 WL 723083, at *10.

This ruling was erroneous: The statute authorizing delegation of HUD's NHPA and NEPA review responsibilities also provides that the local official "consents to assume the status of a responsible Federal official under [NEPA and other federal laws] and ... consents ... to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official." 42 U.S.C. § 12838(c)(4).

The district court interpreted 42 U.S.C. § 12838 narrowly, such that "the recipient agency's responsibilities under NEPA are terminated and any challenge to the absence

or adequacy of the environmental review is moot" once the federal agency releases funds. *Tyler,* 1996 WL 723083, at *9. The district court relied on the fact that § 12838(c)(3) provides that a certification specify that a recipient "has fully carried out its responsibilities as described under subsection (a) of this section." The court also reasoned that devolving environmental review responsibilities on grant recipients while imposing monitoring duties on the federal agency "creates an additional burden that did not exist before." *Id.* at *10.

The district court's reasoning, however, is belied by the plain language of the federal regulations. Title 24 C.F.R. § 58.77(d) imposes monitoring obligations on federal agencies that delegate environmental review responsibilities (though the plaintiffs do not allege any failure to monitor on the part of HUD). Furthermore, 24 C.F.R. § 58.77(b) specifically provides that "[p]ersons and agencies seeking redress in relation to environmental reviews covered by an approved certification shall deal with the responsible entity and not with HUD." Not only does this provide for redress against the grant recipient as "responsible entity," it also expressly contemplates redress in relation to "an approved certification." *See Atlantic Terminal Urban Renewal Area Coalition v. New York City Dept. of Envtl. Protection,* 709 F.Supp. 502, 504 (S.D.N.Y.1989) ("[E]ven if HUD approves a grant for a project found not to conform to [NEPA], the applicant, not HUD, is answerable."); *Raleigh Heights Homeowners Protective Ass'n v. Reno,* 501 F.Supp. 269, 273 (D.Nev.1980) ("It appears there exists a continuing duty of an applicant to insure that federal regulations are complied with even after the release of funds.").

■ Even if the City may be held liable under federal law after federal funds are disbursed, its liability under NEPA remains limited to failures to carry out the terms of the Agreement because, again, plaintiffs have no quarrel with the adequacy of the pre-disbursement reviews themselves. [Blue, at 15–16.] The district court already ruled that there could be no violation of the Agreement's preambulatory language, which states that the comments of interested members of the public have been considered. *Tyler,* 1996 WL 723083, at *3. The plaintiffs do not

appeal this ruling. Instead, the plaintiffs claim a violation of a stipulation in the Agreement that provides that the City shall take public objections into account and "consult as needed" with the objecting party, the State Historic Preservation Officer, or the Advisory Council for a period not to exceed 15 days.[3] On remand, the district court should determine whether there was any such failure to carry out this stipulation.

### E. Standing

Because, as discussed above, HUD and the City may remain liable under the Agreement, the district court should decide, as a threshold matter, whether the plaintiffs have standing to enforce the terms of the Agreement. The City argues that the Agreement is unenforceable by the plaintiffs because only parties to the Agreement have standing to enforce its breach. In support of this proposition, the City cites *Citizens' Comm. for Envtl. Protection v. United States Coast Guard*, 456 F.Supp. 101 (D.N.J.1978). In that case, the court held that the plaintiffs could not enforce an Agreement entered into for purposes of NEPA when they were not signatories to it, nor mentioned in it. *Id.* at 115. Here, however, the public's right to bring objections is specifically mentioned in the Agreement. The district court should decide whether this right is sufficient to confer standing on the plaintiffs to bring suit to enforce the terms of the Agreement.

### III

### Conclusion

The district court erred in holding that the NHPA contains an "implicit statute of limitations" and erred in holding that the plaintiffs' claims were moot because HUD had no continuing authority under the terms of the Agreement. While HUD's authority is limited, it does exist. Similarly, while the City's obligations under the Agreement are limited, the federal regulations clearly provide a federal remedy for breach of those obligations.

On remand, the district court should first address the issue of whether the plaintiffs have standing to enforce the terms of the Agreement. If so, the district court should decide the extent of HUD's and the City's obligations to the plaintiffs under the Agreement and whether these obligations were breached. The district court should also decide how to allocate attorney's fees depending on the resolution of these issues.

REVERSED and REMANDED.

---

**3.** Plaintiffs also claim a violation of the NHPA regulations that state that owners of properties affected by a project "shall be invited to participate as consulting parties ... when they so request." 36 C.F.R. § 800.5(e)(1). However, this regulation merely governs the Section 106 review process, which, as the regulations make clear, is concluded when the Advisory Council accepts the Memorandum of Agreement. 36 C.F.R. § 800.6(a)(i).

