# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAN CARLOS APACHE TRIBE, a
federally recognized Indian tribe;
VELASQUEZ SNEEZY, SR.; ELLIOTT
TALGO, SR.; PAUL NOSIE, JR.,
          *Plaintiffs-Appellants,*

GILA RIVER INDIAN COMMUNITY,
          *Intervenor-Appellee,*

v.

UNITED STATES OF AMERICA; UNITED
STATES DEPARTMENT OF THE
INTERIOR; SAN CARLOS IRRIGATION
& DRAINAGE DISTRICT; NEIL
MCCALEB, Director of the Bureau
of Indian Affairs; GAIL NORTON,
Secretary of the US Department of
the Interior; STEVEN A. WILLIAMS,
          *Defendants-Appellees.*

No. 03-16874

D.C. No.
CV-99-00255-DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
March 17, 2005—Phoenix, Arizona

Filed August 9, 2005

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

10237

---

## COUNSEL

Joe P. Sparks and Susan B. Montgomery, Sparks, Tehan & Ryley, Scottsdale, Arizona, for the plaintiffs-appellants.

Michael T. Gray and Susan L. Pacholski, U.S. Department of Justice, Washington, D.C., for the defendants-appellees.

Riney B. Salmon, II, Salmon, Lewis & Weldon, Phoenix, Arizona, for the intervenor-appellee.

Rodney B. Lewis and John T. Hestand, Chandler, Arizona, for the intervenor-appellee.

---

## OPINION

McKEOWN, Circuit Judge:

In this action for injunction against the United States, the San Carlos Apache Tribe ("Tribe") seeks to maintain certain water levels in the San Carlos Reservoir ("Reservoir") in Arizona. The Tribe brought suit under various federal laws and federal common law and is primarily concerned with damage to the environment, including to fish and other species, caused by decreased water flow into the Reservoir. Our focus here is the Tribe's claim under § 106 of the National Historic Preservation Act ("NHPA"),[1] 16 U.S.C. §§ 470 *et seq.*, which

---

[1] Throughout the opinion we refer to the relevant provision of NHPA as it was enumerated in the original Act, rather than by its current section designation in the United States Code. Section 106 is codified at 16 U.S.C. § 470f.

requires that federal agencies "take into account the effect of the[ir] undertaking[s] on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." The Tribe argues that its suit is properly brought as a private right of action directly under NHPA rather than under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

Whether § 106 provides a private right of action against the United States is a question of first impression in this circuit and one that we consider in light of *Alexander v. Sandoval*, 532 U.S. 275 (2001). The district court dismissed the § 106 claim on the ground that NHPA contains no such private right of action.[2] We agree and affirm.

## BACKGROUND

In 1924, Congress authorized construction of the Coolidge Dam as a means of providing water to the Pima Indians. Congress provided that any excess water was to be used "for the irrigation of such other lands in public or private ownership, as in the opinion of the said Secretary, can be served with water impounded by said dam without diminishing the supply necessary for said Indian lands." Act of June 7, 1924, ch. 288, 43 Stat. 475. The Reservoir is located in the southern portion of the San Carlos Apache reservation. Although the Reservoir

---

[2]In concluding that there was no private right of action, the district court wrote that "cases in the Ninth Circuit involving NHPA violations . . . rely on the APA for jurisdiction." *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 885 (D. Ariz. 2003) ("San Carlos I"). We agree with this result but note a substantive difference. The APA is not a jurisdictional statute. *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998). Rather, "[j]urisdiction must come from a source other than the APA." *Confederated Tribes of the Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924, 929 (9th Cir. 2003) (noting that the relevant jurisdictional statute was contained in the Bonneville Power Act) (quoting *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 627 (9th Cir. 1985)). Here, jurisdiction is predicated on federal question jurisdiction under 28 U.S.C. § 1331.

is encircled by the Tribe's land,[3] its water is designated almost entirely for use by others.[4]

In the mid-1990s, the water levels in the Reservoir began to drop because of drought. The drought did not show signs of abating and threatened to seriously deplete the Reservoir. After failed efforts to negotiate for commitments that water be retained in the Reservoir, in May 1999, the Tribe filed this suit seeking injunctive relief. The Tribe alleged statutory violations of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, the Native American Graves Protection and Repatriation Act, 25 U.S.C. § 3001 *et seq.*, and NHPA, as well as common law nuisance and breach of trust. The district court denied requests for a temporary restraining order and a preliminary injunction and ultimately ruled against the Tribe on all of its claims. *San Carlos I*, 272 F. Supp. 2d at 897.[5]

## ANALYSIS

[1] The NHPA involves "a series of measures designed to encourage preservation of sites and structures of historic, architectural, or cultural significance." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 108 n.1 (1978). For example, the Act establishes the National Register of Historic Places and procedures related to listing on the Register. 16 U.S.C. § 470a. Section 106 requires that federal agencies take

---

[3]The parties dispute whether the Reservoir is properly considered on tribal land. Because this dispute is not relevant to the disposition of the case, we do not address it here.

[4]The priority for water usage from the Reservoir is set by a consent decree that resulted from earlier litigation filed by the United States against all non-Indian users of Gila River water. *United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1430 (9th Cir. 1994).

[5]The only issue we consider here is whether the district court properly dismissed the Tribe's claim under NHPA. The remaining issues are addressed in a separately filed memorandum disposition and discussed at length in the district court's very thorough opinion, *San Carlos I*, 272 F. Supp. 2d at 866.

into account the effect of their undertakings on "any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register."[6]

Section 106 does not expressly provide that private individuals may sue to enforce its provisions. Nor does the statute specify a remedy for violation of this section. The question is whether the statute creates a private right of action by implication. The government maintains it does not and that the only avenue open to private parties seeking to force government officials to comply with § 106 is to invoke the review procedures set out in the APA, including the requirements for a final order and exhaustion. Because the Tribe has not sought review under the APA, the government argues that the Tribe's NHPA claim must be dismissed. The Tribe urges us to find that § 106 contains a private right of action separate and apart from the APA and that dismissal of its claim under NHPA was error.

[2] Whether § 106 contains a private cause of action is a question not yet addressed by our circuit. In *Tyler v. Cisneros*, 136 F.3d 603 (9th Cir. 1998), we assumed without deciding that NHPA contains a private right of action. *Id.* at 608 (reversing the district court's holding that NHPA contains an

---

[6]The full text of the provision is as follows:

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under title II of this Act [16 U.S.C. §§ 470i *et seq.*] a reasonable opportunity to comment with regard to such undertaking.

implicit statute of limitations). In other cases where we have reviewed government compliance with NHPA in actions initiated under the APA, the question has not arisen. *See, e.g.*, *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 804 (9th Cir. 1999) (reviewing under the APA a tribe's claim that the Forest Service violated NHPA in the course of a land exchange).

**[3]** It is now well understood that "private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286. The Court explained that "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* As in *Sandoval*, we begin our analysis by turning to the provision at issue, § 106.

The language of § 106 is strikingly similar to the language the Supreme Court considered in *Sandoval*. In *Sandoval*, the Court's inquiry was whether § 602 of Title VI of the Civil Rights Act of 1964 contained a private right of action. *Sandoval*, 532 U.S. at 278-79. Section 601 of the Civil Right Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. There was no disagreement that § 601 envisioned a private right of action. *Sandoval*, 532 U.S. at 279-80 (citing precedents that clearly established that § 601 created a private right of action).

**[4]** Section 602 authorizes agencies "to effectuate the provisions of [§ 601] . . . by issuing rules, regulations, or orders of general applicability." 42 U.S.C. § 2000d-1. Consideration of § 602 prompted the Supreme Court to clarify that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.' " *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287,

294 (1981)). The Court observed that unlike § 601, which protected individuals, § 602 focused not on individuals to be protected, but on regulatory agencies. *Id.* at 289. As a result, the Court held that § 602 did not create a private right of action. *Id.* at 293.

**[5]** Section 602 of the Civil Right Act and § 106 of NHPA are similar in a crucial way: they are directives to federal government actors. The thrust of § 106 is not directed to individuals or entities that may be harmed through violation of NHPA's dictates, but rather, like § 602 of the Civil Rights Act, to the persons regulated—the heads of federal agencies. This focus on regulating agencies provides little reason to infer a private right of action.

*Sandoval* offers a second lesson that weighs against implying a private right of action under § 106. In rejecting the claim that § 602 of the Civil Rights Act contains a private right of action, the Court took note that § 602 provided means by which regulations promulgated under it were to be enforced. 532 U.S. at 289-90 (describing statutory procedures for enforcing regulations). After describing the enforcement mechanism, the Court concluded that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290.

**[6]** Here, there is an alternate means of ensuring that government officials comply with the dictates of a federal statute: Although not expressly referenced in NHPA, invocation of the APA is a longstanding means to challenge agency action. *See, e.g.*, *Glacier Park Found. v. Watt*, 663 F.2d 882, 885 (9th Cir. 1981) (concluding that "[r]egardless whether a statute implies a private right of action, administrative actions thereunder may be challenged under the APA unless they fall within the limited exceptions of that Act."). Like the Civil Rights Act considered in *Sandoval*, the APA established a specific mechanism for enforcing statutes like NHPA. The APA provides review for "[a]gency action made reviewable

by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. This avenue is open to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

**[7]** Indeed, as then-Judge Breyer explained:

> It is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the *federal* government, for there is hardly ever any need for Congress to do so. That is because federal action is nearly always reviewable for conformity with statutory obligations without any such 'private right of action.'

*NAACP v. Sec'y of HUD*, 817 F.2d 149, 152 (1st Cir. 1987). The logic of *NAACP* resonates in our analysis of § 106. An aggrieved party can sue under the APA to force compliance with § 106 without having a "private right of action" under the statute.

The context of this case—a private party suing the federal government—is an atypical breeding ground to give birth to the question whether a statute impliedly creates a right of action. Whether a federal statute provides a private right of action almost always arises in the context of a claim against a third party, such as a state or private entity, not, as here, against the federal government. *See Sandoval*, 532 U.S. at 278 (private v. state government); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 680 (1979) (individual v. private entity); *Cort v. Ash*, 422 U.S. 66, 68 (1975) (individual v. corporation).[7]

---

[7]In *Cort*, the Supreme Court set out four factors to assist in evaluating whether there is a private cause of action under a statute. 422 U.S. at 78. The statute at issue was a criminal statute prohibiting corporations from making certain political contributions. The plaintiff sought to bring a pri-

Even the term "private right of action" is something of a semantic mismatch in the context of a suit to force agency action under a federal statute.

A critical question is whether the federal government is subject to suit under the statute. Absent a clear waiver, sovereign immunity precludes suit against the United States. *Lane v. Pena*, 518 U.S. 187, 192 (1996). NHPA offers no basis to infer a waiver of sovereign immunity. Rather, the APA provides such a waiver. 5 U.S.C. § 702.[8] As we have observed, in enacting the APA "Congress was quite explicit about its goals of eliminating sovereign immunity as an obstacle in securing judicial review of the federal official conduct." *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524 (9th Cir. 1989).

To permit a case to proceed directly under a federal statute and bypass the APA is not without consequence. The APA includes a series of procedural requirements litigants must fulfill before bringing suit in federal court. For instance, the

---

vate claim for damages against the corporation. *Id.* at 68. Although *Cort* remains viable following *Sandoval*, the context of the claim and the factors do not inform our analysis here. *See Greene v. Sprint Communications Co.*, 340 F.3d 1047, 1052 (9th Cir. 2003) (invoking *Cort* factors); *see also Office Planning Group, Inc. v. Baraga-Houghton-Keweenaw Child Dev. Bd.*, 472 Mich. 479 (Mich. 2005) (laying out opposing views in majority and dissenting opinions on whether *Cort* survived *Sandoval* in analyzing whether the claim must be brought under the APA).

[8]Section 702 reads, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

challenged agency action must be final. 5 U.S.C. § 704. Also, a party generally cannot seek court review until all administrative remedies have been exhausted. *Young v. Reno*, 114 F.3d 879, 881 (9th Cir. 1997). Were litigants able to sue directly under NHPA, they would be able to sidestep the traditional requirements of administrative review under the APA without express Congressional authorization. As Judge Breyer noted, creating a direct private action against the federal government makes little sense in light of the administrative review scheme set out in the APA. *NAACP*, 817 F.2d at 152.

**[8]** A close statutory analog to NHPA is the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370. What § 106 of NHPA does for sites of historical import, NEPA does for our natural environment. Our circuit has already noted the parallel:

> Both Acts create obligations that are chiefly procedural in nature; both have the goal of generating information about the impact of federal actions on the environment; and both require that the relevant federal agency carefully consider the information produced. That is, both are designed to insure that the agency "stop, look, and listen" before moving ahead.

*Pres. Coalition, Inc. v. Pierce*, 667 F.2d 851, 859 (9th Cir. 1982). *See also Morris County Trust for Historic Pres. v. Pierce*, 714 F.2d 271, 278-79 (3rd Cir. 1983).

NEPA "has twin aims. First, it places upon [a federal] agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1066 (9th Cir. 2002) (citation and internal quotation marks omitted). Just as NHPA requires agencies to take into

account the effect of their actions on historic places, NEPA requires agencies to consider the environmental impact of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Even if the agency does not determine that an action is significant enough to trigger the environmental impact statement requirement, it must at least prepare an environmental assessment explaining its finding that the action will have no significant impact on the environment. 40 C.F.R. § 1501.4.

**[9]** A fundamental and oft-quoted principle of environmental law is that there is no private right of action under NEPA. *See, e.g.*, *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988) ("NEPA itself authorizes no private right of action."); *Noe v. Metro. Atlanta Rapid Transit Auth.*, 644 F.2d 434, 439 (5th Cir. 1981) ("[O]ur research has failed to disclose anything to suggest a Congressional intent to recognize an implied judicial remedy for an alleged violation of NEPA.").

**[10]** The upshot of the NEPA cases is that parties are required to proceed under the APA in order to challenge claimed violations of NEPA. This approach stands in contrast to other environmental statutes, such as the Clean Water Act, or the Endangered Species Act, whose language explicitly provides a private right of action. *See* Clean Water Act § 505(a), as amended, 33 U.S.C. § 1365(a)(1) ("any citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of" various provisions of the Act); Endangered Species Act of 1973, § 11(g), as amended, 16 U.S.C. § 1540(g) ("any person" may "commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this Act . . . .").

**[11]** The reason for the distinction among these statutes is clear. The NEPA "stop, look, and listen" obligation is

imposed on the federal government. The obligation to pre-serve species under the Endangered Species Act and to pro-tect the nation's water under the Clean Water Act are also imposed on private parties. 33 U.S.C. § 1365(a)(1); 16 U.S.C. § 1540(g). Any claim for violation of § 106 obligations under NHPA is against the federal government, not a third party. NHPA's status as a "look and listen" statute akin to NEPA weighs against implying a private right of action.

**[12]** Specific comparison of § 106 with the citizen-suit pro-vision of the Endangered Species Act is illuminating. The Endangered Species Act has a citizen-suit provision that authorizes suit against "any person" for violations of any pro-vision of the Endangered Species Act. 16 U.S.C. § 1540(g)(1)(A). The Supreme Court declined to find that the "any person" language authorized suit against the Secretary of Interior, reasoning that to do so would "effect a wholesale abrogation of the APA's 'final agency action' requirement," and that "[w]e are loathe to produce such an extraordinary regime without the clearest of statutory direction, which is hardly present here." *Bennett v. Spear*, 520 U.S. 154, 174 (1997). In contrast, the Court recognized a private right of action against the Secretary under a different provision of the ESA, where the statute expressly authorized suits "against the Secretary." *Id.* at 173-74 (interpreting 16 U.S.C. § 1540(g)(1)(C)). As the Court's reasoning directs, we decline to circumvent the APA to permit a suit against a federal agency absent statutory language permitting such a suit.

**[13]** In concluding that § 106 does not contain a private right of action, we diverge from two of our sister circuits. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3rd Cir. 1991); *Vieux Carre Prop. Owners, Residents & Assoc., Inc. v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989). Both relied on an attorney's fees provision contained in NHPA. 16 U.S.C. § 470w-4. This provision reads:

> In any civil action brought in any United States dis-trict court by any interested person to enforce the

provisions of this Act [16 U.S.C. § 470 *et seq.*], if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable.

16 U.S.C. § 470w-4. The Third Circuit reasoned:

Moreover, since § 305 of the Preservation Act, 16 U.S.C.A. § 470w-4, allows a court to award attorneys' fees and other costs "[i]n any civil action brought in any United States district court by any interested person to enforce the provisions of [the Preservation Act], if such person substantially prevails in such action," we agree with the arguments advanced by Boarhead and amici that Congress must have intended to establish a private right of action to interested parties, such as Boarhead, in these situations.

*Boarhead*, 923 F.2d at 1017. The Fifth Circuit stated that "[r]ather than through APA review, a private right of action against an agency arises under 16 U.S.C. § 470w-4, which provides for NHPA to be enforced 'in any civil action brought in any U.S. District Court by any interested person.' " *Vieux Carre Prop. Owners, Residents & Assoc., Inc.*, 875 F.2d at 458.

We read the attorney's fees provision as permitting fees in an action to enforce NHPA. A section providing for recovery of fees does not answer the question whether there is a direct, private right of action against the federal government. The fees provision does not authorize suit against federal agencies nor is it a waiver of sovereign immunity against the United States for a claim under § 106 of NHPA.[9] Instead, such a

---

[9]We address only § 106 of NHPA and take no position on whether there is a private cause of action under any other section. We do not mean to imply a view one way or the other. We are simply deciding the case before us.

waiver must be predicated in this instance on § 702 of the APA.[10] *Presbyterian Church*, 870 F.2d at 524. Because the APA does not itself contain a fees provision, in an NHPA suit under § 106, a prevailing party may rely on NHPA's fee authorization to obtain attorney's fees.

[14] Thus, we part ways with our sister circuits on the import of the attorney's fees provision. We agree it demonstrates Congressional intent that individuals may sue to enforce NHPA. And we agree that the attorney's fees language evinces congressional intent to cover the costs of those who prevail in a suit under the statute. But it does not follow that Congress intended these individuals to file suit against the United States under NHPA itself, rather than under the well-established procedures set out under the APA. At best, the absence of any private right of action language in § 106 and the presence of the fee provision render the statute ambiguous on the cause of action point. Without explicit language, such an ambiguity can hardly be converted into an implied right of action.

[15] We conclude that § 106 does not give rise to a "private" right of action against the federal government. An aggrieved party may pursue its remedy under the APA.

**AFFIRMED**.

---

[10]The Tribe did not plead its claim under the APA nor did it seek to amend its pleadings.